ROBERT L. CARPENTER and EDWARD C. CARPENTER, Respondents, v. SUZANNE V. CARPENTER, Individually and as Executrix of Estate of Edward E. Carpenter, deceased, Appellant.

ROBERT L. CARPENTER and EDWARD C. CARPENTER, Respondents, v. IN RE ESTATE OF EDWARD E. CARPENTER, deceased, SUZANNE V. CARPENTER, Executrix, Appellant, Nos. 43582, 43583—267 S. W. (2d) 632.

Division One, April 12, 1954.

Motion for Rehearing or to Transfer to Banc Overruled, May 10, 1954.

*Marion D. Waltner, Thomas M. Brandom* and *W. Raleigh Gough* for appellant.

*John H. Lathrop, Horace F. Blackwell, Jr.,* and *Lathrop, Righter, Blackwell & Parker* for respondents.

DALTON, J.—Two appeals involving the same issue have been consolidated. One appeal is from a declaratory judgment and the other is from a judgment affirming an order of the Probate Court. The parties have stipulated that "the parties and the issues of law and fact in the two cases are the same"; that "the demands in the two cases are liquidated and for the same amount"; and that "the result in one will necessarily be the same as the result in the other." Cause No. 43,582 is an appeal by defendant from a declaratory judgment fixing the rights of the parties with respect to liability for that portion of the federal estate tax paid by the testamentary estate, but attributable to the value of an annuity and ordering that said portion of said tax be paid by the beneficiaries of the annuity individually and not out of the residue of the estate. Cause No. 43,583 is an appeal by defendant from a judgment sustaining an order of the Probate Court of Jackson County sustaining exceptions filed by the parties, who are plaintiffs-respondents in Cause 43,582, to the final settlement of the executrix, who is defendant-appellant in the declaratory judgment proceeding. The circuit court judgment on appeal in the probate proceeding had the effect of requiring defendant-appellant, the executrix of the estate of Edward E. Carpenter, deceased, to collect the federal estate tax attributable to the annuity from the beneficiaries thereof individually.

Plaintiffs-respondents are the surviving sons of Edward E. Carpenter who died testate in Kansas City, Jackson County, April 23, 1948, in his 68th year. Defendant-appellant is the widow and executrix of the estate of Edward E. Carpenter, deceased. The deceased is hereinafter referred to as Mr. Carpenter. Mr. Carpenter had been married to one Maude E. Carpenter, but she died in 1940, and he, thereafter, on April 15, 1943, married the appellant. She was 27 years of age at that time, Mr. Carpenter was 62 and his two sons by his first marriage, Robert and Edward, were approximately 36 and 38 years of age, respectively.

In 1933, Mr. Carpenter had purchased an annuity contract from The Penn Mutual Life Insurance Company of Philadelphia, Pennsylvania under which his then wife, Maude E. Carpenter, was named beneficiary if she survived him and, if she did not so survive him, then his two sons, Edward C. Carpenter and Robert L. Carpenter, in equal shares. The annuity contract provided for a monthly income for life to the annuitant after attaining the age of 70, or, if he died before attaining such age, the payment of a "death benefit" to the beneficiary. The amounts of such "life income" installments or of such "death benefit" were to be determined; under certain tables set out in the contract, by the amount of the initial and subsequent deposits under the contract, the age of the annuitant, et cetera. The maximum amount that could be deposited under the contract was

[635] $100,000.00. Mr. Carpenter reserved the right to change beneficiaries, also to designate certain "options" for receiving the death benefit in annual or monthly installments, instead of in one lump sum, by notice in writing to the company.

On February 1, 1946, Mr. Carpenter executed a designation of change of beneficiary of the annuity contract, under which he elected that the "death benefit" thereunder should be paid in monthly installments over a period of twenty years Option B, and designated his wife, Suzanne Virginia Carpenter, as primary beneficiary, and his two sons as contingent beneficiaries, that is, to receive any part of the death benefit not paid to his wife during her lifetime. (Appellant now receives close to $500 per month under the annuity contract).

On November 9, 1944, Mr. Carpenter executed his last will. Specific legacies of a ring, certain corporate stock, and one-half of his club memberships were made to his son, Robert L. Carpenter. His watch and $1,000 in cash and the other one-half of his club memberships were given to his son Edward C. Carpenter. He gave his residence and all furnishings therein and also all of his automobiles to Suzanne Virginia Carpenter, his wife. The will provided that all moneys to be paid his estate for the purchase of his interest in a certain partnership business, together with all future earnings payable to his estate, should be paid at least quarterly to his wife as long as she lived, all installments unpaid at her death to be divided equally between his two sons. The residue of the estate was left to his wife and sons, "share and share alike." His wife and son Robert were named co-executors.

Article X of the will provided: "Should there be any federal estate or state inheritance or succession taxes assessed or levied upon any bequests or devise herein made, then I direct my Executors, out of my estate, to pay any such tax or assessment, the intention being to give said bequests and devises free and clear from all such charges, and should there be any city, state, county, school distrct, or other public taxes, which are a lien and can be paid, upon any of the real or personal property at the time of my death, I direct my Executors to pay any and all such taxes out of my estate, so that any bequest may be as free as possible from liens on account of any such taxes."

On March 21, 1946, subsequent to change of beneficiary in the annuity, Mr. Carpenter executed a codicil to his will, which stated that "having made additional provisions for my beloved wife, Suzanne Virginia Carpenter, separate and apart from the provisions of the aforesaid will," he revoked the provision of the will giving her the entire interest, for life, in the proceeds from the partnership, and substituted therefor a provision that one-third of such proceeds should be paid to her and two-thirds to his son, Edward C. Carpenter. All other provisions of the will remained unaffected by the codicil.

As stated, Mr. Carpenter died on April 23, 1948, survived by

his said wife and two sons. Robert L. Carpenter being a non-resident of Missouri, Mrs. Carpenter was appointed sole executrix.

Mr. Carpenter had been engaged in the window cleaning business in Kansas City, Missouri, for a number of years under the names of "Kansas City House and Window Cleaning Company" and "Building Maintenance Company." This business was first carried on as a corporation, but the corporation was dissolved and a partnership was formed on July 31, 1937. The partners and their respective interests were: Edward E. Carpenter, 60%; Edward C. Carpenter, 20%; and Robert L. Carpenter, 20%. On October 20, 1944, the partnership agreement was modified due to the withdrawal of Edward C. Carpenter from active participation in the business, leaving the partners and their interests as Edward E. Carpenter, 80%, and Robert L. Carpenter, 20%. Then on November 9, 1944, the partnership agreement was again modified so as to provide that, in the event of the death of Edward E. Carpenter, Robert L. Carpenter should have the right to purchase all his interest in the partnership business for $12,000, ▆▆▆▆ provided that the estate of Edward E. Carpenter should participate in the profits from the business, after his death, until it should have received a total of $18,000 from such profits. There were subsequent modifications of the partnership agreement resulting, finally, in the two partners, Edward E. Carpenter and Robert L. Carpenter, each having an equal share in the partnership business. The net profits from the business had averaged $96,396.44 per year for the last five years of the life of Edward E. Carpenter.

For several years prior to his death, Mr. Carpenter had been purchasing United States Savings bonds, in which he and his wife were named joint owners. The total value of these bonds was $36,317.50. In addition, Mrs. Carpenter had, in the same period, purchased a number of bonds, either in her own name solely or jointly with her mother, Mrs. Susan Virginia Waltner. The total value of such bonds was $25,259.75.

Mr. Carpenter had insurance on his life of the total value of $64,312.96 of which $5,000 was payable to Mrs. Carpenter's mother, Mrs. Waltner, $1,000 was payable to his son, Robert L. Carpenter, and the balance was payable to his estate.

The annuity contract (hereinbefore mentioned) had a value (based upon The Penn Mutual's valuation thereof) of $129,685.50 at the time of Mr. Carpenter's death. Of course it did not pass under the will, but was nevertheless taxable under the federal statutes, as hereinafter mentioned. The value of the annuity was apportioned between Mrs. Carpenter, as primary beneficiary, and the two sons of Mr. Carpenter, as contingent remaindermen, so that $6,725.01 of the value was regarded as the value of the contingent remainder interest and the balance, the sum of $122,960.49, was regarded as the value of the interest going to Mrs. Carpenter. These figures were

based upon valuations made by The Penn Mutual Life Insurance Company as the difference between a straight annuity to Mrs. Carpenter for the rest of her life and an annuity for her life and "for twenty years certain." Upon the basis of the revised valuations established by an audit of the federal estate tax return the gross estate was $308,271.58, the deductions were $90,860.55 and the "adjusted net estate" subject to tax was $217,411.03. The total federal estate tax paid on the entire taxable estate was $38,500.54. The portion of the estate tax represented by the annuity was 56.556% of the entire tax, or $21,655.47.

The property specifically devised and bequeathed under the will had the following values: To Mrs. Carpenter, $50,395.00; to Robert Carpenter, $7,922.50; and to Edward Carpenter, $21,015.00. Nonprobate property passing outside the will to these parties had the following values, as established by the federal estate tax return: Mrs. Carpenter's interest in the annuity $122,960.49 and the jointly owned bonds $36,317.50; Robert Carpenter's contingent interest in the annuity $3,362.50 and life insurance payable to him $1,000.00; and Edward C. Carpenter's contingent interest in the annuity $3,362.50. The residuary estate of Mr. Carpenter was sufficient in amount to pay all debts, taxes and administration expense (including federal estate taxes).

On October 19, 1948, upon the advice and at the direction of her then attorneys, appellant, out of her individual funds, paid to herself as executrix the sum of $19,727.28, the amount of the federal estate tax on her interest in the annuity according to the original tax return, and charged herself with that amount in her semi-annual settlement, but she reserved the right to question her liability for the tax. Later, in her final settlement in said estate, defendant-appellant-executrix took credit (as a "return of advance to estate") for the $19,727.28 which she previously had paid into the estate. Exceptions were filed and sustained, as stated.

The question for decision is whether the ultimate burden of the federal estate tax attributable to the value of the annuity contract shall be borne by the beneficiaries of the annuity contract in accordance with their respective interests therein, or shall be borne by the probate estate of decedent ▮▮▮▮ and charged against the residuary legatees in accordance with their interest in the residuary estate. The total federal estate tax attributable to the annuity contract amounted to $21,655.47. If each beneficiary pays a proportionate part of the tax in accordance with the value of their respective interests therein Mrs. Carpenter (appellant) will pay $20,532.91, Robert L. Carpenter $561.28 and Edward C. Carpenter $561.28. If the entire amount of the tax attributable to the annuity contract is paid out of the residuary estate, the tax will be borne equally by the same parties, $7218.33 each. The amount in controversy, as far as

appellant is concerned, exceeds $7500 and this court has jurisdiction of the appeal. Article V, Section 3, Const. of Missouri 1945.

The federal estate tax in question was assessed under the provisions of a Federal Statute, 26 U.S.C.A., Sec. 810, et seq. The tax "was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succession tax. What this law taxes is not the interest to which the legatees and devisees succeed on death, but the interest which ceases by reason of the death." Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S. Ct. 291, 292, 68 L. Ed. 558, 560. The statute (26 U.S.C.A. § 811) provides that there shall be included in the gross estate of a decedent, not only his real and personal property, but transfers made in contemplation of death, revocable transfers, joint interests, property passing under powers of appointment, proceeds of life insurance receivable by the executor and other beneficiaries, et cetera. The "gross estate," therefore, included the annuity contract in Mr. Carpenter's possession and control at the time of his death and in which he had reserved the right to change the beneficiary. 26 U.S.C.A., Sec. 811. The value of the "net estate" for federal estate tax purposes is computed by making certain deductions from the "gross estate." 26 U.S.C.A., Sec 812. The tax imposed is required to be paid by the executor to the collector. 26 U.S.C.A., Sec. 822(b). The purpose and intent is "that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." 26 U.S.C.A., Sec. 826(b). Provision for the collection of the tax is made in the event the tax is not so paid by the executor. 26 U.S.C.A., Sec. 826. The same section also provides that if a tax is paid by or collected from that part of an estate passing to or in the possession of any person other than the executor, such person shall be entitled to reimbursement out of any part of the estate still undistributed, or by a contribution from those persons whose shares would have been reduced if the tax had been paid before distribution. The statute provides for a lien upon the "gross estate of the decedent" to secure the payment of the tax. 26 U.S.C.A., Sec. 827. The tax is payable out of the whole estate, and the lien is against the "gross estate," but the statute does not designate or indicate out of what fund the tax is payable. The tax is not levied upon the residue of the estate. Edwards v. Slocum, 264 U.S. 61, 68 L. Ed. 564, 565; Trimble v. Hatcher's Ex'rs., 295 Ky. 178, 173 S.W. (2d) 985, 988. The "act directed payment by the executor in the first instance, but * * * did not undertake in any manner to specify who was to bear the burden of the tax.. * * * Congress intended that state law should determine the ultimate thrust of the tax." Riggs v. Del Drago, 317 U.S. 95, 98, 101, 63 S. Ct. 109, 110, 111, 87 L. Ed. 106, 142 A.L.R. 1131; Fernandez v. Wiener, 326 U.S. 340, 66 S. Ct. 178, 90 L. Ed.

116. In this case the tax was in fact so paid by the executrix out of the funds of the estate in her hands and from her own funds advanced to the estate. The statute leaves it to "state law" to determine how the tax burden shall be distributed among those who share in the taxed estate, with two exceptions expressly covered by the federal statute, to wit, insurance payable to beneficiaries other than the estate and the recipients of property over which decedent had a power of appointment. In such cases pro rata liability for the tax is imposed, unless the decedent directs otherwise in his will. 26 U.S.C.A., Sec. 826(c) ▆▆▆ and (d). See Priedeman v. Jamison, 356 Mo. 627, 202 S.W. (2d) 900.

▆▆ Appellant contends, and respondents in effect concede, that the annuity contract, although referred to in the contract as a "policy," is not in fact a policy of insurance upon the life of the decedent within the meaning of Sec. 826(c), supra. Kansas City Life Ins. Co. v. Rainey, 353 Mo. 477, 182 S.W. (2d) 624; Helvering v. Tyler (8 Cir.) 111 F. (2d) 422. It is also conceded that there is no state statute which, in express terms, declares where the final burden or "thrust" of the federal estate tax is to fall. Of course, as a consequence of the federal statute requiring the tax to be paid by the executor out of assets in his hands (26 U.S.C.A., Sec. 826(b)), he has to pay it and, as a consequence of the law governing the administration of estates, he has to pay it out of the probate estate generally and, more particularly, if there is a residuary estate, out of that estate until it has been exhausted, and, if there is no residuary estate or it has been so exhausted, it must be paid out of the "general" legacies to the exclusion of "specific" legacies. And, as between real and personal property, payment must be made out of the personal estate until it is exhausted. These rules concern only the *initial* method of paying the tax and from what property it shall be paid. They do not concern the matter of the ultimate liability to pay the tax or any right of the estate to reimbursement for that portion of the tax attributable to non-probate property included in the "gross estate" for federal estate tax purposes.

▆▆ Appellant contends that the question of who has to bear the burden of the proportionate part of the federal estate tax attributable to the annuity contract is one "determinable by the will of the deceased and the proper construction of Article X thereof * * * against its appropriate background"; that Mr. Carpenter's intent "is to be ascertained from the entire picture," set out supra; that the "law casts the burden of the federal estate tax, attributable to the annuity being regarded as a part of the estate, upon the residuary estate of Mr. Carpenter"; that the law of this state casts no liability upon appellant; that "there is no definite direction in the will that the 'thrust' of such tax is to be otherwise than that cast by the law"; that "there is nothing in the surrounding circumstances of

Mr. Carpenter, his relationship to the beneficiaries of his estate, or the size and character of his estate, that leads to a different conclusion''; that the tax is not apportionable at all between testamentary and non-testamentary beneficiaries, ''unless the will affirmatively shows an intent to so charge them''; that appellant was not obligated to pay the tax attributable to her interest in the annuity contract; that she needs no exoneration therefrom; that she ''was privileged to withdraw the amount so advanced by her at any time before final settlement''; and that the trial court erred in deciding otherwise. Appellant admits that there are no Missouri cases on the precise question as to whether we look to the will to exonerate the non-testamentary beneficiaries from an existing liability for their pro rata part of the federal estate tax or whether we look to the will to determine whether it imposes liability upon said beneficiaries where otherwise there would be no liability. Appellant further admits that ''she could not find such exoneration under the language of Article X of the will herein.'' Appellant's position is that the final burden of the federal estate tax rests upon the general estate and, particularly, upon the residuary estate, unless there is a clear definite expression of the testator's intention in the will to the effect that the respective beneficiaries of the non-probate property shall pay that part of the federal estate tax attributable to their property.

Respondents admit the case is one ''of first impression in this court'' and contend that it is clear from the language of Article X of the will that ''Mr. Carpenter intended *to exonerate* from the federal estate tax *only* the legatees and devisees *under* the will and only what they received *under* the will''; that the will contained only a restricted exoneration from the said tax; that property passing outside the will was not exonerated; and that ''the beneficiaries thereof were thus impliedly directed to make the payment of the tax on that property''; that the express direction to the executrix to pay out of the residue of the estate the taxes on the property passing under the will is also a direction *not* to pay out of such residue the federal estate tax on property passing outside the will; that the extrinsic facts hereinbefore set out clearly evidence Mr. Carpenter's intent that appellant pay her own tax on her own interest in the annuity contract; ''that Article X reinforced by the codicil and the extrinsic circumstances constitute a definite direction * * * that defendant pay individually the federal estate tax due on her share of the annuity''; and that, if it does not, this Court should apportion the tax because of the equities and apparent intent.

Appellant relies upon the general rule recognized in many states that in the absence of an apportionment statute or a testamentary provision to the contrary, the ultimate burden of the federal estate tax is not apportioned pro rata among all the devisees, legatees or other recipients of the property included in the taxable estate, but

rests on the general estate and thus ultimately falls on the residuary estate. 47 C.J.S. 1016, Sec. 776. Appellant admits that the issue is determinable solely under the Missouri law, but insists that Missouri follows the majority rule. Appellant's first point and basic premise is that under Missouri law the federal estate tax must be borne ultimately by the residuary legatees, unless the will directs otherwise. Appellant cites In re Holmes' Estate, 328 Mo. 143, 40 S.W. (2d) 616, 619, decided in 1931, prior to Riggs v. Del Drago, supra, which was decided in 1942. The Holmes case has no application here, because in that case the parties "agreed that the tax must be paid out of the estate." The question before the court was as to what part of the estate should be applied in payment of the tax. The agreement explains the holding of the court, the court said: "The will in this case does not direct what funds or assets of the estate shall be appropriated to the payment of the federal estate tax or any other charges against the estate, and 'in the absence of a definite direction on the subject it must be presumed that the intention was that the ultimate weight' of the tax as a charge against the estate must rest where the law of this state relating to the administration of estates of deceased persons places it." There is no such agreement here, and the question is whether appellant, as the beneficiary of non-probate property, or the residuary legatees under the will must bear the ultimate burden of the tax attributable to appellant's interest in the non-probate property (the annuity).

In re Bernheimer's Estate, 352 Mo. 91, 176 S.W. (2d) 15, 22, is cited. In that case a construction of the will on the tax issue was sought with reference to property passing *under* the will and it appeared that two bequests in the will could be treated as equal, as the testatrix probably intended, and the apportioning of the federal estate tax ratably would prevent the exhaustion of one bequest and obviate a defeat of testatrix's plain intention; accordingly, a ratable apportionment of the federal estate tax liability was ordered. The court, after reviewing the law and facts, said: "In the circumstances of this case, a ratable apportionment of the federal tax is particularly appropriate." (176 S.W. (2d) 15, 22). In that case there was no true residuary clause and no specific direction in the will as to which of the two legacies should bear the tax. Only property passing under the will was involved. The case does not support appellant's position. Respondents, however, construe the Bernheimer case as establishing the principle that, in the absence of an expressed intent in the will, as to the ultimate thrust of the federal estate tax, such tax will be equitably apportioned according to the testator's apparent intent.

The third and last Missouri decision cited by appellant on this issue is Bryant v. Green, 328 Mo. 1226, 44 S. W. (2d) 7, decided in 1931. That case was decided upon the theory that, since real estate in Missouri is not subject to administration expenses, it could not

be included in calculating the value of the gross estate for federal estate taxes under the federal statute and, since real estate was not subject to the federal estate tax, the real estate in question could not be subject to contribution to the payment of the tax. In view of subsequent statutory amendments and decisions affecting the basis for decision in that case, it does not support appellant's position.

The issue was not decided in In re Poe's Estate, 356 Mo. 276, 201 S.W. (2d) 441, 445, where the court said: "Whether the matter of apportionment of the tax is for the legislature or for the courts in a proper case is a matter we may not decide in this proceeding." Nor was the issue decided in Priedeman v. Jamison, supra, 202 S.W. (2d) 900, 903, where the court said: "* * * absent a clear (statutory) direction on the subject of taxes, the interpretation of provisions of the will relied upon to exonerate legatees or devisees from the estate tax or to make an apportionment of the tax among them might have become the subject of judicial decision." In the case of Lipic v. Wheeler, 362 Mo. 499, 242 S.W. (2d) 43, 49, the parties agreed "that, absent state statutory requirements or the provisions of the will or trust declaration, the trust estate is not liable for such pro rata of federal estate taxes, and that no such statutory requirements exist in Missouri," but the court held that "it is quite clear that Joseph Sr. (the trustor), intended (by the terms of the trust agreement) that the trust estate be obligated for any and all taxes which his own estate was legally obligated to pay upon the trust assets." In Saracino v. St. Louis Union Trust Co. (Mo. Sup.), 254 S.W. (2d) 600 the issue was not reached.

Having assumed that the law of this state cast the ultimate burden of the federal estate tax upon the residuary estate, appellant next contends that any intent to transfer that burden to the beneficiaries of the annuity contract "may not be lightly inferred, but such intent must be made to 'clearly appear' from the will"; that any attempt to so shift the burden of the tax would be in the nature of a "charge" against property devised or bequeathed under the will and would have to be clearly shown; and that no such intent clearly appears from the Carpenter will. Appellant then argues that "a failure to exonerate certain beneficiaries from the tax (when such beneficiaries need no exoneration) is not equivalent to an intent to *charge* such beneficiaries with a liability otherwise not incumbent on them; and that "the will does not direct that the proportionate part of the estate tax, attributable to the inclusion of the annuity in the gross estate, should be paid by the beneficiaries under the annuity contract." Again, this argument is based upon the theory that the state law placed the ultimate burden for the tax upon the residuary legatees and that the will did not direct otherwise.

The general rule followed in many states clearly is that, in the absence of a state statute or testamentary provision to the contrary,

the ultimate burden of the federal estate tax falls on the residuary estate. In re Heringer's Estate, 38 Wash. (2d) 399, 230 P. (2d) 297, 300; 47 C.J.S. 1016, Sec. 776; 28 Am. Jur. 136, Inheritance, Estate and Gift Taxes, Sec. 279; Annotation 142 A.L.R. 1137. But a testator has the right by testamentary provision to place the burden of the tax where he wishes and the federal estate tax statute makes provision for the exercise of that right. 26 U.S.C.A., Sec. 826(b); Y.M.C.A. of Columbus, Ohio v. Davis, supra, 264 U.S. 47, 51. And see Bernheimer's Estate, supra. The difficulty lies in ascertaining the intent of the testator in view of the particular provisions of the will. In this case the testator (Mr. Carpenter) expressly directed that "federal estate * * * taxes assessed or levied upon any bequests or devise herein made" should be paid out of his estate, but he made no direct reference to the payment ▇▇▇ of that portion of any federal estate taxes attributable to his non-testamentary property such as the annuity, which passed by contract independent of the will and did not become a part of his probate estate.

The general rule, referred to by appellant, apparently developed during a period in which many courts construed the federal estate tax statutes as evidencing the intent of Congress to cast the burden of the tax upon the residuary estate, but later the Supreme Court held in Riggs v. Del Drago, supra, that "Congress intended that state law should determine the ultimate thrust of the tax." 40 Columbia L.R. 690. Some authorities definitely hold that cases supporting the general rule were "based on an erroneous concept of the Federal Estate Tax Act" and refuse to follow it. Pearcy v. Citizen's Bank & Trust Co. of Bloomington, 121 Ind. App. 136, 96 N.E. (2d) 918, 923. Apparently to remedy the situation which had developed by state court action prior to the decision in the Riggs case, some sixteen states have adopted statutes providing for the apportionment of federal estate taxes among all interested parties, absent an express direction in the will to the contrary (31 Boston University L.R. 233, 234), while in other states the right to apportionment was judicially determined. C.C.H. Fed. Estate Tax Reporter, Para. 3140.16. The rule adopted by the Supreme Court of Ohio is that in the absence of a statute or a testamentary direction to the contrary, the federal estate tax on all property within the testamentary estate will be paid from the residue while all non-testamentary interests will bear only the burden of estate taxes attributed to them. Miller v. Hammond, 156 Ohio St. 475, 104 N.E. (2d) 9, 18; Fidelity Union Trust Co. Exec. v. Hall, 125 N.J.Eq. 419, 430; Gaede v. Carroll, 114 N.J.Eq. 524, 169 Atl. 172; Commercial Trust Co. v. Thurber, 136 N.J.Eq. 471, 42 Atl. (2d) 571, 572, aff. 45 Atl. (2d) 672. And see Industrial Trust Co. v. Budlong, 77 R.I. 428, 76 Atl. (2d) 600, which is contrary to the general rule. See Annotation, 115 A.L.R. 916, 917; 28 Am. Jur. 139, Sec. 285.

The courts of some other states recognize "the general rule that, in the absence of state statute or testamentary provision to the contrary, the ultimate burden of an estate tax falls on the residue estate," but hold that, where the will directs the executor to pay, out of the assets of the estate, all federal taxes "payable with reference to any of the devises or bequests herein made," or words to that effect, the will, *by inference,* directs the executor *not* to pay out of the assets of the estate such taxes with reference to any property included within his taxable estate which did not pass by devise or bequest. The result is that payment out of the residuary estate of the federal estate· tax attributable to the non-probate property is denied on the ground that the testator has indicated a contrary intention in his will. In re Heringer's Estate, 38 Wash. 399, 230 P. (2d) 297; Central Hanover Bank & Trust Co. v. Peabody, 68 N.Y.S. (2d) 256, 262; Brauburger v. Sheridan, 7 N.J. Super. 576, 272 Atl. (2d) 363, 366(7). And see Priedeman v. Jamison, supra (202 S.W. (2d) 900, 904); In re Gatch's Estate, Court of Appeals of Ohio, 92 N.E. (2d) 398, 402; In re Gatch's Estate, 153 Ohio St. 401, 92 N.E. (2d) 404.

In the present case, the probate court of Jackson County sustained the exceptions filed by respondents and required appellant to pay that portion of the said estate tax attributable to her share of the annuity and to collect from respondents the tax attributable to their respective shares of the annuity. The circuit court affirmed, as stated, and apparently followed the line of cases just cited. It found that, "the language of Article X of the will and of the codicil manifests the testator's intent, and constitutes his definite direction that the federal estate tax due upon the transfer of said annuity be paid by the beneficiaries of that annuity individually, according to their proportionate interests therein, and not out of the residue of his estate."

We have found no Missouri case determining the ultimate burden of the federal estate tax as between the estate and the non-testamentary property included in the "gross estate". for tax purposes, where the will has expressed no clear intent as to who should bear the ultimate burden of the estate tax attributable to the non-testamentary property. In both of the proceedings now before us we may determine the issues upon equitable principles. State ex rel. Baker v. Bird, 253 Mo. 569, 580, 162 S.W. 119; Maxwell v. Andrew Co., 347 Mo. 156, 146 S.W. (2d) 621, 626. All of the parties are before the court and the detailed facts shown by the record have been reviewed. The probate estate has paid a total of $21,655.47 of federal estate taxes that were based upon, and directly attributable to, the necessary inclusion of the annuity contract in the "gross estate" for taxation purposes. The probate estate, through the executrix, was not a volunteer in so paying this tax, since the payment thereof was required by the federal statutes. The tax was a tax against whole estate

and a lien against all of the property of the ''gross estate'' when the tax was paid. It was not a debt or a tax against the deceased or against the property of his probate estate alone. Prorating the federal estate tax in this case between the testamentary estate and the non-testamentary estate seems to provide a fair and impartial basis for distribution of the tax burden in question, where the testator in his will has not (in our opinion) otherwise provided except as to devises and bequests under the will. We have seen that there is nothing in the federal estate tax statutes to prevent a proper application of equitable principles to prevent injustice, where the tax is based upon both testamentary and non-testamentary property. The mere fact that the executor has an obligation to pay a particular tax does not negative a right which he may have to contribution from someone else on account of that payment. Pearcy v. Citizens Bank & Trust Co. of Bloomington, 121 Ind. App. 136, 96 N.E. (2d) 918, 923. And see Paul, Fed. Estate & Gift Taxation, Vol. I, p. 783, Sec. 13.54. In equity and good conscience nothing appears from this record to require the residuary legatees under the will to bear the ultimate burden of federal estate tax, which was based upon both probate and non-probate property. It is our conclusion that the federal estate tax should be prorated, as stated, and that the beneficiaries of the annuity should pay the tax attributable to their respective interests therein. Louisville Trust Co. v. Walter, 306 Ky. 756, 207 S.W. (2d) 328, 331; Succession of E. R. Ratcliffe (La.), 33 So. (2d) 114, 117; Trimble v. Hatcher's Estate, supra, 173 S.W. (2d) 985, 989; 47 C.J.S. 1025, Sec. 781. The trial court reached a proper conclusion, regardless of the reason assigned.

The judgment is affirmed. All concur.