**TRADERS NATIONAL BANK OF KAN-
SAS CITY, Executor of the Estate of
James Oliver Miller, Deceased, Plain-
tiff,**

v.

**The UNITED STATES of America,
Defendant.**

**No. 9496.**

United States District Court
W. D. Missouri, W. D.

Dec. 18, 1956.

John B. Gage, Jess W. Van Ert (of Gage, Hillix, Moore & Park), Kansas City, Mo., for plaintiff.

Edward L. Scheufler, Dist. Atty., and Horace W. Kimbrell, Asst. Dist. Atty., Kansas City, Mo., Charles K. Rice, Acting Asst. Atty. Gen., Andrew D. Sharpe, Robert H. Showen, Attorneys, Department of Justice Washington, D. C., for defendant.

DUNCAN, Chief Judge.

Plaintiff instituted this suit under the provisions of § 1346(a) (1) Title 28 U.S. C. to recover the sum of $3,020 alleged to have been wrongfully and illegally collected as an estate tax from the estate of James Oliver Miller, deceased. The facts are not in dispute, and were submitted to the court by stipulation.

Briefly stated, the facts are, that the Traders National Bank of Kansas City is the administrator of the estate of James Oliver Miller, deceased, who died testate on October 2, 1950, survived by his wife, Myrtle L. Humphrey, aged 60, and one adult child by a former marriage. The will was duly filed for probate in Jackson County, Missouri, and on Oc-

tober 16, 1950, Letters Testamentary were issued to the plaintiff.

On January 11, 1951, decedent's widow filed her renunciation of the provisions of the will, § 469.150 RSMo 1949, V.A.M.S. and also her declaration to take her statutory interest in the decedent's estate, pursuant to the provisions of § 469.120, V.A.M.S.

Thereafter, as a result of said renunciation, she became endowed of a one-third part of all the lands whereof her husband died seized, § 469.010, V.A.M.S. and also one-half of the personal estate belonging to her husband at the time of his death, § 469.070, V.A.M.S. She also became entitled to her homestead rights in accordance with § 513.475, V.A.M.S., of the value of $3,000, in the family residence situated in Kansas City, Missouri. Substituting her rights in statutory life estates, she elected to take the commuted cash value of her statutory dower and homestead according to the Carlisle Tables of Mortality, as authorized by § 442.530, V.A.M.S.

Decedent's gross estate amounted to $154,757.91, of which $72,945 was in real estate. A breakdown of the commuted value of the widow's interest is as follows:

| | |
|---|---|
| Real Estate value | $72,945.00 |
| Less homestead | 3,000.00 |
| Adjusted real estate value | $69,945.00 |
| A. Dower-⅓ Life interest Life expectancy 8.108 years Commuted value of dower | $11,000.00 |
| B. Homestead $3,000.00 x 6 x 8.108 Commuted value of homestead | $ 1,459.44 |
| | $12,801.72 |

The widow has received, or is entitled to receive as the surviving widow, the amounts aforesaid in cash, as her sole and absolute property, pursuant to the laws of Descent and Distribution of Missouri.

The Federal Estate Tax return, prepared and computed by plaintiff in the amount of $3,026.23, was filed on January 2, 1952, with the Director of Internal Revenue in Kansas City, Missouri, the sum being remitted on that date. Upon an audit, a deficiency in the amount of $3,246.97 was assessed against the plaintiff on February 11, 1954, and thereafter, on February 26, 1954, the plaintiff paid said sum, together with interest of $156.-25 and filed a claim with the Director of Internal Revenue, Kansas City, Missouri, for refund in the amount of $3,020 which, on October 22, 1954, was rejected.

It is the contention of the plaintiff that the commuted value of the widow's dower and homestead rights is a valid and legitimate marital deduction from decedent's gross estate for Federal Estate Tax purposes. The breakdown of these amounts is shown in the computation heretofore set out.

As decedent's widow was entitled to one-half of the personal property, and, in addition, received the commuted value of the dower and homestead interest, her interest amounted to 37.13% of the estate in its entirety. Plaintiff contends, therefore, that since the commuted value of dower and homestead constitute nonterminable interests, and together with her interest in the personal estate comprise 37.13% of the total estate, the Estate tax burden placed upon her interest in the estate should be reduced proportionately to the percentage of the estate to which she is entitled.

In pursuance of this claim, it is plaintiff's position that the rule of equitable apportionment is applicable in Missouri, and that applying the 37.13% standard for tax obligation, is in accord with that law, rather than the 50% deduction charged by the Commissioner.

The question for the court's determination is purely one of law, and is one of first impression under the laws of the State of Missouri. Primarily, the court must determine whether or not under the laws of the State of Missouri, as they existed when this claim arose, the commuted value of dower and homestead in-

terests are terminable, or otherwise. The applicable Federal statute is § 812 (e) (1) (A) (B), Title 26 U.S.C., Internal Revenue Code of 1939, Allowance of Marital Deduction, which provides:

"(A) *In general.* An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(B) *Life estate or other terminable interest.* Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest * * *

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

"and no deduction shall be allowed with respect to such interest (even if such deduction is not allowed under clauses (i) and (ii))."

Though dower in Missouri has been abolished, § 474.110, V.A.M.S., the law as it was in effect prior to January 1, 1956, is controlling. § 469.010, V.A.M.S., which established dower, provided:

"Every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life. * * *"

While the husband might make provision by will which would be in lieu of dower, § 469.140, V.A.M.S., a surviving widow, under § 469.150, V.A.M.S., retained the right to renounce the will and thereafter claim as if the husband had died intestate. The statute provided:

"In such case the wife shall not be endowed in any of the real estate whereof her husband died seized or in which he had an interest at the time of his death unless she shall, by writing duly executed and acknowledged as in cases of deeds for land, and filed in the office of the court in which the will is probated and recorded within twelve months after the proof of the will, not accept the provisions made for her by said will * * *."

Tradition has denominated dower as an inchoate right which is unenforceable during the life of the husband. Although Missouri, recognizing the weaknesses inherent in the common law dower right, vested in a widow the right to immediate transfer of her unassigned dower interest, with subsequent equitable enforcement of same, § 469.-060, V.A.M.S., this expansion of rights did not serve to change the character of dower from a right to a vested interest. Thus, under the law of Missouri, a widow who chose to enforce her dower right, and took a life estate in one-third of her husband's realty, held a terminable interest which was created in her by virtue of the husband's death. Relying upon this alone, such an interest would come within the exclusionary provisions of § 812(e), supra.

Consonant with developments in other common law jurisdictions, however, Missouri created a new right wherein a widow, electing dower, was given the option to take the commuted value thereof. The relevant part of § 442.530, V.A.M.S., creating this right, provides:

"When a party as tenant for life * * * or in dower * * * is entitled to the use of any estate * * * and is willing to accept a gross sum in lieu thereof * * * the sum shall be estimated according * * * to the Carlisle tables of mortality * * *."

The interest which the widow would then take, as opposed to the dower interest,

would be absolutely vested and non-terminable.

■ The Government has submitted that this constituted a conversion of a terminable interest, and that, therefore, the marital deduction provisions of § 812, supra, are inapplicable. In support of this, the Government relies upon § 81.47(d) of Regulation 105, as added by Treasury Decision 5699, which states, in part:

"* * * Subsequent conversions of the property are immaterial for this purpose. Thus, where a decedent bequeathed his estate to his wife for life with remainder to his children, the interest which passed to his wife is a 'nondeductible interest', even though the wife agrees with the children to take a fractional share of the estate in lieu thereof, or sells the life estate for cash, or acquires the remainder interest of the children either by purchase or gift."

Such a regulation, when within the provisions or purposes of the act and properly promulgated, has all the force and effect of law, and, in the determination of any question to which it will apply, the court should give great weight, and every inference of validity, to conditions it may establish. However, when inconsistent with the purposes of the act under which it is promulgated, or in derogation of the state law, wherein that law is binding upon the court in the determination of the issues, then, of course, such a rule, or any regulation or decision of the Treasury Department, is not binding upon the court, and need not be considered as controlling.

■ In this respect, the law of Missouri is clear that the commuted dower interest is a distinct interest from that taken by dower, and is, therefore, not a subsequent conversion. Under the law of Missouri, as it then existed, estates could not be closed within twelve months, since that was the period within which claims were to be filed against the estate. § 464.020, V.A.M.S. Though § 442.530, supra, does not stipulate a time within which the widow is required to elect to take the commuted value of dower, it is implicit in the provision that it will apply when one is "entitled to the use of any estate" and not subsequent to being vested with the consummate life interest. Considered in this light, it is apparent that the option to commute must be within the twelve month period before the administration of the estate is closed, and, furthermore, at a point in time prior to the actual possession of the life estate. Absent such a conclusion, it is not conceivable how the estate could be properly administered and distributed if there was uncertainty relating to ultimate disposition of the present use of real estate, and, to the personal property that might be used in satisfaction of the commuted value.

■ The statute, therefore, perceives two distinct interests available to the widow where the husband has died intestate, or in the event of renunciation. One is a vested life interest which continues after the administration has been closed for her natural life, and the other is a vested and absolute interest, which may be taken by option before the estate has been closed. Under these circumstances, it is the opinion of the court that the commuted value of dower represents a non-terminable interest within § 812, supra.

Section 442.530, supra, entitled the widow to the same option in the case of the homestead interest. Considering the scope of this provision, the court believes that a similar non-terminable interest, not within Regulation 105, supra, is inherent in the option to take the commuted value of the interest.

Homestead, in Missouri, is the right to occupy the home for the life of the widow, or her widowhood, and the minority of such children as may have been born of the marriage. § 513.475 et seq., V.A.M.S.

In the present action, since there are no minor children, there were but two ways in which her homestead right would terminate—by death or remarriage. Until the moment that either of these con-

tingencies occurred, the homestead land would be subject to the terminable interest held by the widow. However, if the widow desired to take the commuted value thereof, under § 442.530, supra, the property which was subject to the homestead would become free of any terminable rights, and, in turn, would become a part of the estate which would be shared by the other heirs, each according to their respective interests. The nature of this statutory option, therefore, as in the case of dower, is distinct, and related to the life estate only insofar as it may be considered an alternative interest.

No cases have been cited, and I have been unable to find any in Missouri, which are determinative of the exact questions before the court. Many cases have discussed the legal nature of dower and homestead. However, they afford no help in determining whether the commuted value of these terminable interests constitute subsequent conversions of the interests, or are distinct interests in and of themselves. As noted heretofore, Missouri has since abolished dower, and under present conditions, such interest as the widow takes will not be terminable, and will be considered as a marital deduction.

■ It would seem reasonable to assume that the Congress, when it used the words "terminable interest", did not envision its application to such interests as come to the widow absolutely and unequivocally, at her option, under the laws of Descent and Distribution of the state wherein she resides. It is likewise apparent that the very purpose of the commutation provision was to vest in the widow something more than the traditional life interest, something of a definite nature, which, though lesser than the alternative life interest in monetary value, would represent an absolute non-terminable interest in the widow.

■ It is therefore my conclusion that the commuted value of dower and homestead under the then existing laws of Missouri was an absolute right which was vested in the widow as a marital deduction, and was not, as contended by the Government, a subsequent conversion of a terminable interest.

■ It remains to be determined whether the Commissioner should reduce the marital deduction by only 37.13% of the estate tax rather than 50%, which was originally determined and has been paid. It is admitted that, under the law, this question must be determined in accordance with the laws of the State of Missouri. Riggs v. Del Drago, 317 U.S. 95, 98, 101, 63 S.Ct. 109, 110, 111, 87 L.Ed. 106. In the absence of any statutory laws determining this question, we must look to the decisions of the courts, many of which have been cited, particularly by the plaintiff, for the proposition that equitable contribution or equitable apportionment may be required of the nonprobate property in the payment of estate taxes.

■ The estate tax, unlike the inheritance tax imposed by the State of Missouri, is a tax imposed upon the estate itself, and, as in this case, the tax is paid by the administrator out of the personal property belonging to the estate. Of course, where personal property comes into possession of the administrator, any real property which may not be necessary for the payment of debts, may entirely escape the payment of any estate tax whatsoever, unless the rule of equitable contribution is applied. No problems are presented in those states where there is a statute determining the impact of tax upon the distributive shares, or when the will determines when it shall be done.

The question has been discussed in three cases in Missouri, in which, defendant insists, the question has been determined adversely to the plaintiff. In re Holmes' Estate, 328 Mo. 143, 40 S.W.2d 616, 619; Saracino v. St. Louis Union Trust Co., Mo.Sup., 254 S.W.2d 600; In re Poe's Estate, 356 Mo. 276, 201 S.W.2d 441. Plaintiff, on the other hand, relies upon Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632, as being conclusive of the question in its favor.

I do not think the issue was squarely before the court in either In re Poe's

284

Estate, or the Saracino cases, supra, as it was in Carpenter v. Carpenter, supra. In the Poe case, the court was dealing with a closed estate, and held that the action before it was not proper to determine remedies. Likewise, in the Saracino case [254 S.W.2d 603], there had been a final settlement and no appeal from the court, and it was held that:

"Many Missouri cases are to the effect that the approval by the probate court of the final settlement of an administrator or executor is a judgment entitled to the same favorable presumptions which are accorded to the judgments of all courts of record."

That court concluded by stating:

"While said judgment approving said final settlement stands, it is conclusive that the executors properly administered the estate and plaintiff does not state a claim for prorating the Federal estate tax to the several beneficiaries of the John D. Poe, deceased, estate. * * *"

Subsequently, in Carpenter v. Carpenter, supra [364 Mo. 782, 267 S.W.2d 641], where the issue was squarely presented, as noted supra, in ruling in favor of apportionment, the court stated:

"We have found no Missouri case determining the ultimate burden of the federal estate tax as between the estate and the non-testamentary property included in the 'gross estate' for tax purposes, where the will has expressed no clear intent as to who should bear the ultimate burden of the estate tax attributable to the non-testamentary property. In both of the proceedings now before us we may determine the issues upon equitable principles. * * *" (Citations omitted).

The Court further stated:

"All of the parties are before the court and the detailed facts shown by the record have been reviewed. The probate estate has paid a total of $21,655.47 of federal estate taxes that were based upon, and directly attributable to, the necessary inclusion of the annuity contract in the 'gross estate' for taxation purposes. The probate estate, through the executrix, was not a volunteer in so paying this tax, since the payment thereof was required by the federal statutes. The tax was a tax against [the] whole estate and a lien against all of the property of the 'gross estate' when the tax was paid. It was not a debt or a tax against the deceased or against the property of his probate estate alone. Prorating the federal estate tax in this case between the testamentary estate and the non-testamentary estate seems to provide a fair and impartial basis for distribution of the tax burden in question, where the testator in his will has not (in our opinion) otherwise provided except as to devises and bequests under the will. We have seen that there is nothing in the federal estate tax statutes to prevent a proper application of equitable principles to prevent injustice, where the tax is based upon both testamentary and non-testamentary property. The mere fact that the executor has an obligation to pay a particular tax does not negative a right which he may have to contribution from someone else on account of that payment. [Citations omitted.] In equity and good conscience nothing appears from this record to require the residuary legatees under the will to bear the ultimate burden of federal estate tax, which was based upon both probate and nonprobate property. It is our conclusion that the federal estate tax should be prorated, as stated, and that the beneficiaries of the annuity should pay the tax attributable to their respective interests therein." (Citations omitted.)

And 267 S.W.2d loc. cit. 640:

"The issue was not decided in In re Poe's Estate, 356 Mo. 276, 201 S.W.2d 441, 445, where the court said: 'Whether the matter of ap-

portionment of the tax is for the legislature or for the courts in a proper case is a matter we may not determine in this proceeding.' * * * In Saracino v. St. Louis Union Trust Co., Mo.Sup., 254 S.W. 2d 600 the issue was not reached."

It seems clear from the reasoning of the court in the above case that, as to the matter of equitable contribution or apportionment generally, it would follow the rule enforced in many states, and, in the absence of a statute, would apply this doctrine in Missouri.

Considering this as indicative of Missouri law at this time, it is my conclusion, in applying the equitable contribution doctrine to the case at hand, that reduction should be on a basis of 37.13% as heretofore discussed, instead of the 50% as applied by the Commissioner.

A decree in accordance with this Memorandum Opinion may be submitted within ten days hereof.