ESTATE OF Elmer COHEN, Deceased, Commerce Bank of St. Louis, N.A. and G.B. Dunn, Plaintiffs/Respondents,

v.

Patricia CROWN, et al., Defendants/Appellants.

Nos. 70685, 70686.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 12, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 1997.

Application to Transfer Denied Nov. 25, 1997.

Sonnenschein Nath & Rosenthal, Charles A. Redd, Timothy J. Prosser, St. Louis, for Crown.

Anderson & Gilbert, Stuart M. Haw, St. Louis, for Dunn, Jr. and Sondra Dunn.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Patricia D. Gray, Merle L. Silverstein, St. Louis, for Vanderbilt Temple Israel & Cong. Ohabai Shalom.

The Stolar Partnership, Lawrence P. Katzenstein, Jacqueline A. Dimmitt, St. Louis, for Jewish Hospital.

PUDLOWSKI, Judge.

This is an appeal from the trial court's judgment concerning the liability for the estate taxes issued to the non-testamentary beneficiaries and testamentary legatees of Elmer Cohen's (Testator's) Last Will and Testament (Will). Because the Will does not specifically direct the life insurance beneficiary be exempt from paying her pro rata share of estate taxes, but does clearly evidence Testator's intent to exonerate the specific and general legatees, we affirm in part and reverse and remand in part with directions.

## I. Background

In November 1986 Testator purchased a life insurance policy from Merrill Lynch (the

Merrill Lynch Policy) for the single premium of $500,000. In December 1986 Testator purchased a second life insurance policy for the single premium of $500,000, this time from Family Life Insurance Company (Family Life Policy). In March 1987 Testator changed the beneficiary of the Merrill Lynch Policy to his niece, Patricia Crown (Crown). In September 1987 Testator also changed the beneficiary of the Family Life Policy to Crown.

In January 1990 Testator executed his Will. He devised his home to Sondra and G.B. Dunn (the Dunns) and bequeathed to them his shares of stock in Data Display Corporation. Testator bequeathed the residuary of his estate to Commerce Bank (Bank) in trust for the benefit of his then-ailing wife, with the income to be paid to her for life.

Testator provided in his Will that upon his wife's death the principal of the trust should be distributed to certain individuals and charitable organizations. One such bequest was $125,000 to the Dunns. After all of the specific bequests had been made from the trust's principal, Testator left the remainder of the trust's principal to four charitable organizations: Vanderbilt University, the Temple Israel, the Congregation Ohabai Shalom and the Jewish Hospital of St. Louis (respondents). In the event his wife should predecease him, Testator stated the residuary legacy should not go into a trust but should be distributed in the same manner as was originally planned for the trust's principal after his wife's death.

In January 1991 Testator's wife died. On October 19, 1993, Testator died. On November 22, 1993, Testator's Will was admitted to probate. The bank and G.B. Dunn were appointed personal representatives. In January 1995 the personal representatives petitioned the court to construe the Will to determine Testator's intent regarding the apportionment of estate taxes.

On April 18, 1995, a hearing was held. On April 22, 1996, the court entered its order and judgment finding the only provision in the Will mentioning estate taxes—Item VII—did not clearly express Testator's intent. By examining the entire Will and extrinsic evidence, the trial court determined the estate taxes were to be apportioned among non-testamentary life insurance beneficiary and the testamentary special and general legatees on a pro rata basis. From this order and judgment the Dunns and Crown appeal.

## II. Standard of Review

■ Before addressing the Dunns' and Crown's appeal, it is first necessary to examine the guidelines which guide this court's review of the trial court's construction of Testator's Will. Contrary to what the respondents, the Dunns and Crown, contend, the proper standard of review in the instant case is not that of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Rather, "no deference need be given to the trial court's judgment in this case because the ... question is the construction of the [Will] based upon the language [it] employs." *Estate of Boder,* 850 S.W.2d 76, 79 (Mo. banc 1993). Our review, then, is *de novo. Id.* With this in mind, we turn first to Crown's appeal.

## III. Crown's Appeal

On appeal Crown argues the trial court erred in determining there was no clear intent in the Will to exclude the life insurance proceeds from estate taxes. Crown argues Item VII of the Will clearly expresses Testator's intent that the life insurance proceeds should be taken free from estate taxes. Item VII provides:

I direct my Personal Representatives to pay, without reimbursement or contribution, all estate, inheritance taxes and succession duties assessed by reason of my death by the United States or any State thereof.

Crown argues the words "without reimbursement or contribution" are clear evidence that Testator intended Crown to receive the life insurance proceeds free from estate taxes. We disagree.

■ Life insurance proceeds are to be included in a decedent's "gross estate" when determining the amount of federal estate tax that must be paid. *Carpenter v. Carpenter,* 364 Mo. 782, 267 S.W.2d 632, 637 (1954). Federal law requires the tax on the gross

estate to initially be paid by the executor out of the whole estate. *Priedeman v. Jamison,* 356 Mo. 627, 202 S.W.2d 900, 903 (Mo.1947). But it is state law, except as provided by the Internal Revenue Act, which governs the ultimate thrust of the apportionment of the estate taxes. *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); *Priedeman,* 202 S.W.2d at 903 (Mo.1947); *Carpenter,* 267 S.W.2d at 637. The Internal Revenue Act does, however, provide an exception, mandating life insurance beneficiaries pay a pro rata share of the estate taxes unless the Testator specifically directs otherwise in his will:

> Unless the Testator directs otherwise in his will, if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the taxable estate.

26 U.S.C. § 2206 (1986).

In other words, it is federal law that governs Crown's appeal, not state law.

> The [Internal Revenue Act] leaves it to 'state law' to determine how the tax burden shall be distributed among those who share in the taxed estate, *with two exceptions expressly covered by the federal statute, to wit, insurance payable to beneficiaries other than the estate* and the recipients of property over which decedent had a power of appointment. *In such cases* pro rata liability for the tax is imposed, unless the decedent directs otherwise in his will. [Cites omitted].

[Emphasis supplied]. *Carpenter v. Carpenter,* 364 Mo. 782, 267 S.W.2d 632 (1954).

In applying the federal statute our Supreme Court has been very cautious in shifting the ultimate tax burden of the portion of the tax attributable to the non-testamentary insurance gift to recipients who take under the will. It has required the evidence be clear that the testator not just intended this, but actually directed such action, and has implied the insurance proceeds should be specifically mentioned as passing free of es-

tate taxes if this is in fact the testator's direction.

> Should it be [the life insurance beneficiary] is not subject to [her share of the estate tax liability], the effect of such a ruling would be to increase [the life insurance beneficiary's] insurance benefit and shift the ultimate burden of the portion of the tax (attributable to the insurance and otherwise recoverable by [executor] under the [Internal Revenue Act]) to recipients of the testator's testamentary disposition. We should not so rule unless it is clear the testator has so *directed....* The testator, in naming those whose gifts were to be received 'in full, clear and free of all taxes herein described,' did not name the beneficiary of his life insurance policy.

[Emphasis in original]. *Priedeman,* 202 S.W.2d at 903–904.

 In examining the entire will, we find no direction by Testator that the burden of tax liability generated by the life insurance proceeds should be shifted from Crown to those taking under the Will. There is no mention of Crown or the life insurance proceeds in the Will. Where no specific reference is made directing the non-testamentary life insurance beneficiary to be excluded from paying its share of the estate taxes, no clear direction exists and the non-testamentary life insurance beneficiary must pay its pro rata share of estate taxes. *Priedeman, supra.* Point denied.

### IV. The Dunns' Appeal

Although it did not find Item VII of Testator's Will ambiguous, the trial court did find it meaningless and refused to give any effect to it. On appeal the Dunns contend this was error, in that refusing to give effect to an unambiguous clause of the Testator's Will fails to enforce Testator's intent. We agree.

In *Estate of Heisserer v. Loos,* 698 S.W.2d 6, 8 (Mo.App.1985) we recently directed that "[w]here a will contains plain and unambiguous language, courts *must* give effect to that language." [Emphasis supplied]. The plain and unambiguous meaning of Item VII is that the personal representative must initially pay the estate taxes, as is required by law, *Riggs, supra,* and is then prohibited from

obtaining contribution or reimbursement for the payment of those taxes unless there is insufficient funds. The only question that remains is from whom the personal representative is prohibited from seeking reimbursement.

■ After bequeathing the home and the Data Display stock to the Dunns, Testator designated the remainder of his estate as his residuary estate. Testator then established two plans for the disbursement of his residuary estate. Item III(a) was the first disbursement plan, directing the residuary of Testator's estate into a trust if his wife survived him with the income to be paid to her for life. Item III(b) then enumerated those individuals and charities who were to receive specifically enumerated monetary bequests from the trust's principal once Testator's wife died. After each specified amount was paid out of the trust's principal the remainder was then to be distributed to the respondents in equal shares. Item IV explained the second disbursement plan which would take effect in the event Testator's wife predeceased him. Item IV was the same as the disbursement plan for the trust's principal from the first plan. However, Item VII was independent of both Item III and Item IV. Clearly, Testator intended Item VII to be given effect regardless of which plan was used. *See Commerce Trust Co. v. Starling,* 393 S.W.2d 489 (Mo.1965)(giving effect to the words "without reimbursement or contribution" in tax clause of decedent's trust). Furthermore, when the specific bequest of the home, along with the specific monetary bequests made to the various general legatees, is combined with Item VII, it becomes evident Testator intended each beneficiary take the specific item or specific monetary amount without requiring contribution or reimbursement for taxes.

■ At oral arguments the respondents contended the doctrine of equitable apportionment should apply in this case. But as explained above, the doctrine of equitable apportionment, "which places the burden of the federal estate tax on the property that generates the tax and exonerates from the burden the property which does not," is only appropriate if the court cannot determine testator's intent. *Boder,* 850 S.W.2d at 78–79. As discussed above, we believe Testator intended the specific and general legatees to take without paying estate taxes. Thus, the doctrine of equitable apportionment is not applicable.

■ The respondents also contended at oral arguments that because the residuary legatees are charities, the result of giving Item VII any effect would be to place a tax on charitable bequests, something contrary to both Missouri and federal law. This argument fails on three points. First, the Testator intended the specific and general bequests to pass free of estate taxes. He intended the estate taxes be paid out of assets of the estate with the residue to be distributed to the charitable legatees. The issue of the taxable status of the residuary legatees is immaterial when determining Testator's intent. As explained *In re Estate of Wahlin,* 505 S.W.2d 99, 108 (Mo.App.1973), the issue when construing Testator's will is to determine "whether it contained a 'clearly expressed intention' on [Testator's] part …" that the estate taxes were "… to be borne by his residuary estate *before* calculating the distributive share of the residuary charitable legatees." [Emphasis added]. Thus, it is reasonable that the testator bequeath the specific and general beneficiaries a specific gift or sum of money and intended those bequests free from any estate taxes and after payment of the estate taxes and probate expenses, the residue is to be distributed to the respondents.

We hold, therefore, that Testator's intent as expressed in his Will was to exclude the specific and general legatees from paying their share of estate taxes. Furthermore, where the non-testamentary life insurance proceeds are not specifically exempt in the will, no clear direction exists to shift the burden of a pro rata share of the estate taxes from the life insurance beneficiary to others. The judgment of the trial court is affirmed in part and reversed and remanded in part for action consistent with this opinion.

CRANE, P.J.,and GERALD M. SMITH, J., concur.