In MATTER OF ESTATE OF BELLE R. HOLMES, Deceased; FLORENCE HOLMES WOODRUFF and FLORENCE HOLMES WOODRUFF as Trustee, Appellant, v. ROBERT HOLMES and J. HOWARD HOLMES.—40 S. W. (2d) 616.

Division One, June 24, 1931.

144

*Watts & Gentry* for appellants.

*Jourdan & English* for respondents.

· FERGUSON, C.—This proceeding is brought here on an appeal by Mrs. Florence Holmes Woodruff from the action of the Circuit Court of the City of St. Louis in overruling her exceptions to the final statement of Robert Holmes and J. Howard Holmes, executors of the estate of Belle R. Holmes, deceased.

Mrs. Belle R. Holmes died testate leaving four children, Robert Holmes, J. Howard Holmes, Mrs. Florence Holmes Woodruff and Mrs. Isabel H. Keech surviving her. By her will she made provision for the payment of certain specific legacies, and then devised and bequeathed a one-fourth part "of the rest, residue and remainder" of her property and estate to each of her sons, Robert Holmes and J. Howard Holmes. The other one-half of her residuary estate was disposed of as follows:

"I give, devise and bequeath unto my two sons and my two said daughters, jointly and unto the survivors, survivor or successor of them the other equal undivided one-half ($\frac{1}{2}$) of said rest, residue or remainder of my real and personal property and estate, to have and to hold unto them and their heirs forever, IN TRUST, HOWEVER, for the sole and separate use behoof and benefit during their natural lives, of my said daughters Florence and Isabel, in equal and undivided parts, upon the terms and conditions and with all the powers and duties as trustees hereinafter set out and declared:

"My said trustees shall hold, manage, control, sell and assign, lease or rent the real or personal property of which said trust estate may at any time be composed and the proceeds of any such sale, conveyance or assignment they shall invest and reinvest for the benefit of the trust estate hereby created as to my said trustees may seem best in their discretion, so as to derive income, hereby intending to give and giving to them the power to rent, lease, sell, convey exchange or otherwise dispose of said real and personal property vested in them as trustees, as well as that into which it, or any part thereof, may be invested, reinvested, converted or reconverted, for the sole and separate use and benefit of my said daughters, who shall each respectively receive, during her natural life, monthly or quarterly, as she may elect, one-half ($\frac{1}{2}$) of all net income arising from the real and personal property at any time composing said trust estate."

The will then provides that in the event of the death of her said daughters or either of them "leaving a child or children" such child or children "shall have and take equally, per stirpes, the share of its or their deceased parent when and as they may arrive at the age of twenty-one years" and for the maintenance, support and education of such child or children until the age of twenty-one years is attained "if it be reasonable or proper in the opinion of my said trustees" out of the income of the deceased parent, if sufficient or out of the principal as well if the income be not sufficient. It is then directed that in the event of the death of either of said daughters without leaving any lineal descendant, the entire share of the estate which had been held for her during her life shall go to the

surviving daughter and the two sons in equal shares or if any of them should then be dead, to their children, if any, per stirpes.

The two sons, Robert Holmes and J. Howard Holmes were named as executors. The will was duly admitted to probate in the Probate Court of the City of St. Louis, and letters testamentary were issued to the executors named therein.

The following listed personal property comprised the assets of the estate received by the executors: 1000 shares, being all the stock, of the Holmes Investment Company, a family investment corporation; 500 shares of the St. Joseph Lead Company, and 104 shares of the Manhattan Electric Railway Company; Cash in bank, $56,856.83; a promissory note in the principal sum of $10,000; Jewelry of an appraised value of $4,765, and an automobile of an appraised value of $3,000. The jewelry was specifically bequeathed to the two daughters, Florence Holmes Woodruff and Isabel Holmes Keech.

In the course of and during the administration the executors collected and received dividends on the corporate stocks and interest on the note and on bank deposits as follows: Dividends on St. Joseph Lead Company stock, $3221; dividends on Manhattan Electric Railway Company stock, $3,647; dividends on Holmes Investment Company stock, $248,000; interest on bank deposits, $1124.58; interest on note, $767.78. In addition to the dividends paid in money as above listed, a stock dividend of the St. Joseph Lead Company of a par value of $1250 was received. The money in bank, $56,856.83, which was taken over by the executors on their appointment, the principal sum of the note, $10,000, the sum of $3,000 for which the automobile was sold, and the money received as dividends and interest as above set out, comprised the money collected and received by the executors from all sources and constituted a common fund in their hands out of which they paid certain specific legacies, the expenses incurred during the last illness and the funeral and burial expenses, all accounts and claims allowed against the estate, state and city taxes, costs of administration, the New York State transfer tax in the amount of $307.31, and the Federal estate tax in the amount of $146,542.06. In the final settlement the balance in money on hand and the corporate stocks were apportioned and distributed pursuant to the provisions of the will relating to the residuary estate.

Florence Holmes Woodruff filed exceptions to the final settlement, which were overruled by the probate court, and the final settlement approved. Whereupon the exceptor appealed to the circuit court, where after a hearing thereon the exceptions were overruled, the final settlement approved, and the order for the distribution of the money and stocks made by the probate court in conformity with the apportionment set out in the final settlement confirmed. The

148

exceptor then appealed to this court. The original exceptions as filed in the probate court were seven in number, as follows:

1. That the proceeds of the sale of the automobile were used to pay debts.

2. That the New York inheritance tax was paid out of income instead of corpus.

3. That the Missouri inheritance tax was paid out of income instead of corpus.

4 and 5. That the payments of executors' commissions were excessive.

6. That the Federal estate tax was paid out of income instead of corpus.

7. That certain stock was distributed to only a portion of the trustees instead of all of the trustees.

At the hearing in the probate court it appearing that the Missouri inheritance tax had not been paid by the estate; that the executors' commissions were not excessive, but in fact less than that to which the executors were, under the statute, entitled, and that the stock ordered to be distributed to the trustees had been issued in the name of all the trustees, exceptor dismissed and abandoned her exceptions numbered 3, 4, 5, and 7. Only exceptions numbered 1, 2 and 6 were heard in the circuit court and are for our consideration here.

We shall first discuss exception number 6 which alleges that the executors paid the Federal estate tax out of income of the estate. Exceptor's contention is stated in her brief as follows: "Under the law, that tax could not properly be paid by the executors out of the income of the estate of Mrs. Belle R. Holmes, deceased, since, under the terms of her will, a trust fund was created and it was provided that the income on that trust fund should be paid to Mrs. Woodruff and Mrs. Keech, daughters of the deceased, in equal shares so long as both of them lived. The trust fund comprises one-half of the residue of the estate. Under the law, Mrs. Woodruff was, therefore, entitled to one-fourth of the income of the estate from the date of the death of the deceased, which should have been paid to the trustees, beginning at the death of the testatrix." It will be noted, however, that the bequest for the benefit of exceptor is not a specific legacy, but is "one-half of the net income arising from the real and personal property at any time composing *the said trust estate.*" The trust estate referred to is one-half of the residuary estate which is given to four trustees of whom exceptor is one and two of whom are persons other than the executors with the provision: "My said trustees shall hold, manage, control, sell and assign, lease or rent the real or personal property of which said trust estate may at any time be composed and the proceeds of any such sale, conveyance or as-

signment they shall invest and reinvest . . . sell, convey, exchange or otherwise dispose of said real and personal property *vested* in them as trustees." The will does not provide for the separation of income from corpus and the payment of income or any part thereof to the beneficiary named in the trust during the period of administration, but directs that exceptor be paid one-half of the net income arising from the property "at any time *composing said trust estate.*" The trust estate provided for could not be determined and did not come into existence until the administration was completed and final settlement made, whereupon the one-half of the "rest, residue or remainder" of the "property and estate" passed to and "vested" in the trustees named and composed "said trust estate." The residuary estate is that which remains after all obligations constituting charges against the estate and all specific legacies and bequests have been met and. discharged. If a specific and outright bequest had been made of certain shares of stock to the trustees for the benefit of exceptor, such shares of stock would be considered as appropriated at the time of the testator's death and whatever dividends accrued upon them from and after that time would belong to the beneficiary (Woerner's American Law and Administration (3 Ed.) p. 1572) and exceptor's theory would be applicable, but such is not the instant case.

The act of Congress imposing a "tax upon the transfer of the net estate of each decedent," referred to by the parties to this proceeding as the Federal estate tax, provides that such tax shall be paid by the executor of the estate to the Collector of Internal Revenue, but the act does not designate or indicate out of what funds the tax is payable except that relating to insurance. The parties hereto are agreed that the tax must be paid out of the estate, but appellant says it should have been paid out of the corpus of the estate, and income should not have been applied to the payment thereof, and since the money in the corpus of the estate was insufficient to pay the tax the executors should have sold a sufficient number of shares of stock for that purpose. This contention of appellant follows the theory which we have ruled against her that the income accruing from the corpus of the estate should have been set apart, held intact and paid by the executors, upon distribution of the estate, to the residuary legatees.

Discussing this tax the Court of Appeals of the State of New York says: "Unless the testator otherwise directs, the whole tax is to be paid, so far as practicable, out of the estate before the amount remaining in the estate for distribution thereafter can be determined or the amount of a residuary bequest fixed." [Farmers' L. & T. Co. v. Winthrop, 238 N. Y. 488-497.] The will in this case does not direct what funds or assets of the estate shall be ap-

propriated to the payment of the Federal estate tax or any other charges against the estate and "in the absence of a definite direction on the subject it must be presumed that the intention was that the ultimate weight" of the tax as a charge against the estate must rest where the law of this State relating to the administration of estates of deceased persons places it. [Bemis v. Converse, 246 Mass. 131, 134.] If it be claimed that inequalities will result that must be assumed to have been contemplated by the testatrix. [New York Trust Co. v. Eisner, 256 U. S. 345-349.] Therefore in the absence of any direction in the will concerning income accruing upon the corpus of an estate, the earnings, income, or increase on and accretions and accessions to the corpus of the personal estate received by the executor upon his appointment, arising and accruing during the period of administration, are payable to the executor and become assets in his hands (23 C. J. 1129; Schouler on Wills (6 Ed.) p. 1954) which he may rightfully use for the payment of debts, taxes, costs of administration and obligations which are legal charges against the estate. Our administration statutes specifically provide that "all interest received by executors or administrators on debts due to the deceased shall be *assets in their hands.*" [Sec. 222, R. S. 1919; Sec. 223, R. S. 1929.] Sections 224, 225, Revised Statutes 1919, being Sections 225, 226, Revised Statutes 1929, direct the application of money "which has come to the hands of such executor or administrator *from all sources*" to the payment of debts against the estate and costs of administration. If the money coming into the hands of the executors from all sources is sufficient to pay the legal charges against the estate in full neither the necessity nor right to sell the remaining portion of the corpus of the estate or any part thereof exists except such part as may be perishable. Section 111, Revised Statutes 1919 (Sec. 112, R. S. 1929), provides for the sale of "all goods and chattels of the deceased that are liable to perish, be consumed or rendered worse by the keeping" and Section 112, Revised Statutes 1919 (Sec. 113, R. S. 1929), reads: "If the perishable goods be not sufficient to pay the debts, the executor or administrator shall, in the same manner, sell other personal estate until the debts and legacies be all paid; but specific legacies shall not be sold in any case; unless it become necessary for the payment of debts." We hold, therefore, that under the facts of this case the cash dividends on corporate stocks and the interest on the note and bank deposits collected and received by the executors were assets in their hands for the payment of charges against the estate, and the Federal estate tax being a charge against and payable out of the estate it was properly paid by the executor out of the common fund made up, as we have hereinbefore said, of money composing a part of the corpus and the dividends and interest received by the executors.

The payment of the New York transfer tax in the sum of $307.31 was necessary to effect the transfer of certain assets of the estate to the executors and was paid prior to the semi-annual settlement. By reference to the settlements made and filed by the executors we note that after payment of specific money legacies approximately $57,000 was paid out of the corpus in the discharge of debts and charges allowed against the estate hence the New York State transfer tax may in fact have been paid out of corpus. The basis for the allegation that income was used to pay this tax is the fact that none of the shares of stock were sold and unless part of the income was used in the payment of the debts, charges and taxes paid by the executors it would have been necessary to sell some of the stocks. The transfer against which the tax is imposed was not a transfer of property directly to trustees under a trust created by the will, but the personal estate as a whole passed into the hands of the executor and the trust in the residuary estate created by the will as we have said, could not and did not come into existence until the administration of the estate was finally concluded and all debts, specific bequests, charges and costs of administration discharged and the residuary estate determined. The tax imposed by the state of New York upon the transfer of property by a non-resident decedent is a fixed per centum upon the clear market value of the property less certain deductions allowed and is computed upon the total amount which passes to all heirs, devisees or legatees from a single decedent. The relationship of the beneficiary to the decedent has no bearing on the question of liability or the extent thereof. It is not computed upon the amount which passes to each individual heir, devisee or legatee separately nor upon the amounts passing to beneficiaries of a certain degree of relationship. The Federal estate tax and the transfer tax of the state of New York, referred to in the exceptions as the inheritance tax of the state of New York, are alike in principle and operation. Both the Federal estate tax and the New York transfer tax are levied on the right to transmit property and are payable by and out of the estate. [Johnson v. Keith, 294 Fed. 964.] What we have said in approving the Federal estate tax therefore applies to the payment of the New York State transfer tax and we rule the exception numbered 2 against appellant.

Exception numbered 1 complains that when the automobile, inventoried as an asset of the estate, was sold the proceeds were placed in the general fund of the estate out of which debts, taxes, and costs of administration were paid, and alleges that under the terms of the will the proceeds should have been forthwith equally divided among the four children. A determination of this exception involves a consideration

of a portion of the will and we quote certain pertinent provisions of the will which, we think, tend to reflect the intention of the testatrix in reference to the disposition of the automobile:

"as long as my daughter Isabel H. Keech shall remain a widow and shall desire to reside in my dwelling house, Number 9 Portland Place, St. Louis, Missouri, '. . . she shall have the right to use and occupy said dwelling together with all the furniture, furnishings and bric-a-brac, paintings and fixtures, silver, china, linen, beds, and beddings therein at the time of my death free of rent, provided however that during her use and occupation of said house and the contents aforesaid she shall keep the same in good repair, keep the same insured against fire and the elements, pay all taxes, general and special levied or imposed thereon. . . . In the event that my said daughter Isabel should marry again or cease to use and occupy said dwelling . . . the bric-a-brac, linen, china and silver shall be equally divided between my said daughters as personal gifts and all of the rest of the furnishings, belongings and furniture contained in said dwelling and formerly owned by me shall be equally divided between my four children or their descendants (per stirpes) forthwith. My said daughter Isabel shall have the right to use any automobile or automobiles owned by me at the time of my death free of rent, but subject to the payment of all running expenses, repairs, maintenance, taxes and insurance by her and the same shall be disposed of for the benefit of all four of my children whenever said house furnishings are disposed of or divided as above provided. All insurance policies shall be procured to be issued for the benefit of my four children as their interests may appear according to my will and testament."

No contention is made that the automobile should not have been sold, as it appears that the contingency upon the happening of which the house furnishings should "be equally divided between" the four children occurred, and the will directs that thereupon the automobile be disposed of. It will be noted that when the daughter, Isabel ceased to use and occupy the dwelling, the bric-a-brac, linen, china, and silver was to be equally divided between the two daughters and the "rest of the furnishings, belongings and furniture" was to be "equally divided between" the four children "forthwith." The provision relating to the automobile is that it be disposed of "for the benefit of all four" of the children and concerning the insurance which the daughter Isabel was required to carry on the automobile during the time she had the use of it, the will states that such insurance should be "issued for the benefit of my four children as their interests may appear according to my will and testament."

The will does not say concerning the proceeds derived from the sale of the automobile that same shall be equally divided forthwith

among the four children, as is said in reference to the furniture. Since it is clearly and specifically directed that the furniture be equally divided among the four children, while it is directed that the automobile be disposed of for the benefit of the four children, with the insurance thereon issued for the benefit of the four children, "as their interests may appear according to" the will, we conclude that the testatrix intended the words "for the benefit" to mean as the interests of the four children were defined in the residuary clauses of the will and that she intended that the proceeds from the sale of the automobile become a part of the residue to be divided in accordance with the residuary provisions of the will. We rule the exception against the appellant.

The judgment of the circuit court is affirmed. *Sturgis* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinioin of the court. All of the judges concur.