ESTATE OF JOHN H. BOOGHER, SARA GARDNER, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39250. Filed September 16, 1954.

*Davis Haskin, Esq.*, for the petitioner.
*Melvin A. Bruck, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* Counsel for the parties stipulated in the opening statements that decedent was unmarried at the time of his death. The remaining facts are stipulated in writing. The facts are found in accordance with the stipulations.

John H. Boogher died a resident of the city of St. Louis, Missouri, on December 18, 1948. A Federal estate tax return was filed by Olive Boogher Moffitt as surviving executrix of the Estate of John H. Boogher and the tax shown to be due on the return was paid to the collector of internal revenue for the first district of Missouri on March 15, 1950.

The decedent, during his life, purchased a number of United States Savings Bonds, Series D and F, with his own funds, and had them registered in coownership form, such as, for example: "John H. Boogher or Edward Bland." In December 1946 and January 1947, the decedent delivered such bonds in each instance to the person named as coowner. There was a total of 37 of such bonds, all in denominations of $1,000, and the names of the coowners, relationship, issue dates, and redemption values at the date of decedent's death are as follows:

| Coowner | Relationship | Purchase date | Redemption value as at date of death |
|---|---|---|---|
| *Series D* | | | |
| 1. Edward Bland | grand-nephew | }Apr. 1940 | $940 |
| 2. Nancy Bland | grand-niece | | 940 |
| 3. Lawrence B. Gardner | grand-nephew | | 980 |
| 4. George Gardner, Jr | grand-nephew | | 980 |
| 5. Benjamin Gardner | grand-nephew | }Jan. 1939 | 980 |
| 6. Nathaniel M. Griffin | grand-nephew | | 980 |
| 7. Ralph D. Griffin II | grand-nephew | | 980 |
| 8. Holly Holliday | grand-niece | | 940 |
| 9. Willett Holliday | grand-nephew | }Apr. 1940 | 940 |
| 10. John Holliday | grand-nephew | | 940 |
| 11. Olive Holliday | niece | }Jan. 1941 | 900 |
| 12. Olive Holliday | niece | | 900 |
| 13. Natalie Reeve | grand-niece | Jan. 1939 | 980 |
| 14. Josephine Reeve | niece | }Jan. 1941 | * |
| 15. Josephine Reeve | niece | | * |
| 16. Glenn V. Russell, Jr | grand-nephew | }Jan. 1939 | 980 |
| 17. Eleanor Russell | grand-niece | | 980 |
| 18. Sophie Russell | niece | }Jan. 1941 | 900 |
| 19. Sophie Russell | niece | | 900 |
| 20. John Shewmaker | grand-nephew | | 940 |
| 21. Hillary Shewmaker | niece | }Apr. 1940 | 940 |
| 22. Hillary Shewmaker | niece | | 940 |
| 23. Frank M. White | step-grandson | | * |
| 24. Gertrude White | step-granddaughter | }Jan. 1939 | * |
| 25. William R. White | stepson | | 980 |
| *Series F* | | | |
| 26. Mrs. Frances Bland | niece | | * |
| 27. Mrs. Frances Bland | niece | }May 1941 | * |
| 28. Arnold Boogher | nephew | | 861 |
| 29. Arnold Boogher | nephew | | 861 |
| 30. Lawrence Boogher | brother | }Oct. 1941 | 848 |
| 31. Lawrence Boogher | brother | | 848 |
| 32. Mrs. Sara Gardner | niece | | 861 |
| 33. Mrs. Sara Gardner | niece | }May 1941 | 861 |
| 34. Mrs. Natalie Griffin | niece | | 861 |
| 35. Mrs. Natalie Griffin | niece | | * |
| 36. Olive Moffitt | sister | Oct. 1941 | 848 |
| 37. Olive Moffitt | sister | May 1941 | 861 |
| Total | | | $27,650 |

*Each of these bonds was redeemed by the coowner prior to the decedent's death.

None of the 37 bonds was in the possession of the decedent at the date of his death and no part of the value of the bonds was included in decedent's gross estate in the Federal estate tax return. Each of the bonds was purchased entirely with decedent's own funds. Seven of the bonds had been redeemed by the coowners prior to decedent's death. The 30 unredeemed bonds had a total redemption value of $27,650 on the date of his death.

Treasury Department Regulations, Department Circular No. 530, Sixth Revision, February 13, 1945 (stipulated by the parties to be applicable to the bonds herein involved), provide, in part, with respect to a savings bond registered in the names of two persons as coowners (section 315.45) that (1) during the lives of both coowners, it will be paid to either coowner upon his separate request without requiring the signature of the other coowner, or to both upon their joint request; and (2) upon the death of one coowner, the surviving coowner will be recognized as the sole and absolute owner, as though the bond were registered in his name alone.

Respondent, in his deficiency notice, included in gross estate the value of all of the savings bonds except those which had been redeemed prior to decedent's death.

Respondent takes the position that the unredeemed bonds were acquired entirely with decedent's funds and were held by the decedent and the other coowners as joint tenants within the meaning of section 811 (e) of the Internal Revenue Code of 1939.

Petitioner contends, on the other hand, that coowned bonds were not held as joint tenants and points in particular to the provisions of the Treasury regulations applicable to savings bonds which permit one coowner to redeem the bond, receive the entire proceeds, and thus completely terminate and cut off the rights of the other coowner.

The form in which savings bonds are issued, and the provisions prescribing the conditions, restrictions, and consequences relating to ownership and transfer thereof are prescribed by Treasury regulations for administrative convenience and for the protection of both the issuer and the owner. They are intended for practical purposes and are based upon practical experience. For the purposes of this case, the two significant provisions relating to bonds issued in the coownership form here involved are (1) the right of either coowner (or both) to redeem during the life of both, and (2) the fact that upon the death of one, the surviving coowner will be recognized as the sole owner.

The only bonds with which we are concerned are those which were not redeemed. While possession of the bonds was turned over to the other coowners by the decedent, there is nothing in the record to support the view that the decedent, during his lifetime, yielded up his potential survivorship right.

From the perspective of the general principles of law, there are numerous decisions which set forth the elements of joint tenancy. We think it would serve no helpful purpose to review such decisions here. They recognize that a joint tenant may cause a partition of the property and thus obtain his proportionate share free from the restrictions of the joint tenancy. We realize that this is not the equivalent of the right (under the applicable Treasury regulations under which the bonds here involved were issued) of one coowner in possession to dispose of the whole, to the exclusion of the rights of the other. We point out, at the same time, that the decisions recognize as the most significant single characteristic of joint tenancy the right to take the whole by survivorship, as a result of which the interest of a deceased joint tenant will not pass to his heirs, devisees, or personal representatives, but will pass, instead, to the surviving joint tenant or tenants by operation of law.

The issue which we must resolve is whether the form of coownership now under consideration is a joint tenancy within the meaning of section 811 (e) of the Code of 1939. In the light of the following discussion, we do not think that the fact that one coowner has the right, by virtue of the provisions of Treasury regulations, to redeem a bond to the exclusion of the interest of the other coowner (as distinguished from the customary right of one joint tenant to realize only upon his proportionate share of the jointly owned property) is determinative of the problem.

Upon consideration of the basic objectives of the Federal estate tax laws, the requirement of a practical implementation of such objectives, and the well-established administrative interpretation of section 811 (e) in its proper setting of the lengthy legislative history hereinafter outlined, we have concluded that the value of the bonds in question is includible in decedent's gross estate under the provisions of that section.

Before going into the broader outlines of the history of the applicable administrative interpretation, we think it significant to point out that the treatment of bonds held in coownership form has likewise been practical in the coordinated implementation of both gift and estate tax laws. In this connection, Mimeograph 5202 (1941-2 C. B. 241) is applicable to the specific problem which we face. It provides, in part, as follows (p. 242) :

If "John Jones" purchases with his separate funds savings bonds and has them registered in his name and that of another individual in the alternative as co-owners, for example, "John Jones or Mrs. Ella S. Jones," there is no gift for Federal gift tax purposes, unless and until he during his lifetime gratuitously permits "Mrs. Ella S. Jones" to redeem them and retain the proceeds as her separate property, in which event a gift of the then redemption value of the

bonds would be made. Of course, such bonds if not previously redeemed would, on the death of "John Jones" be includible in his gross estate for estate tax purposes at their full redemption value.

We find that the administrative interpretation of the law has been consistent from the time of its first expression. Regulations 37, promulgated pursuant to the 1916 Act, contained no provisions here applicable. When revised in 1921, in relation to the 1918 Act, however, Regulations 37 provided in part as follows:

The statute provides for the taxation of interests *held jointly* * * * by the decedent and any other person or persons. This class of property includes all interests, whether in real or personal property, in which the survivor takes the entire property by *right of survivorship*, and it consequently does not form part of the decedent's estate for purposes of administration. It does *not* include interests held as *tenants in common*, where the interest of each tenant passes to his estate, free from any right of survivorship.

The following are examples of this class of property: * * * stocks and bonds held in the joint names of several owners. [Emphasis added.]

Article 23 of Regulations 63, relating to the 1921 Act, was substantially similar to that quoted above except that the example was changed to read as follows:

and, in general, all securities and other personal property, where the title thereto was vested in the decedent and one or more other persons, subject to the right of survivorship.

Article 22 of Regulations 68, promulgated under the Revenue Act of 1924, was the first interpretation of the "held as joint tenants" language. (Former statutes used the words "held jointly.") That article stated in part:

The foregoing provisions of the statute extend to *joint ownerships*, wherein the *right of survivorship* exists, and specifically reaches property *held jointly* by the decedent and any other person or persons, * * * provided the decedent contributed towards the acquisition of the property so held or deposited, or acquired it by gift, bequest, devise, or inheritance. The statute applies to all classes of property, whether real or personal, where the survivor takes the entire interest therein *by right of survivorship*, and no interest therein forms a part of the decedent's estate for purposes of administration. It does *not* include property held by the decedent and any other person or persons as *tenants in common*. [Emphasis added.]

The current regulation, Regulations 105, section 81.22, uses language substantially similar to that contained in Regulations 68 above. It is noted that the import of the regulatory language was the same throughout substantially the entire history of the Federal estate tax. During the same period, there were a number of reenactments of the statute. The only difference in the material language of the statutes was that the provisions prior to the Revenue Act of 1924 used the words "held jointly," while the Revenue Act of 1924 and subsequent acts used the words "held as joint tenants," which language is now in

the Internal Revenue Code. In the Senate and House reports relating to the change of language in the 1924 Act, the only comments were to the effect that the existing laws were "reworded to secure greater clarity" (S. Rept. No. 398, 68th Cong., 1st Sess., p. 35; reproduced in 1939–1 C. B. (part 2) 290), and "for purposes of clarity" (H. Rept. No. 844, 68th Cong., 1st Sess., p. 25; reproduced in 1939–1 C. B. (part 2) 308).

We must assume that Congress, in repeated reenactments of the law over a substantial period of time, was aware of the consistent administrative interpretation of the law, and we must give substantial weight to such interpretation in the light of the apparent approval thereof to be implied from the fact that Congress found no reason to alter or correct such interpretation. *Helvering* v. *Bliss*, 293 U. S. 144; *D. E. Alexander*, 22 T. C. 234.

Petitioner further argues that the action of decedent in delivering possession of the bonds to the several coowners achieved the result of transferring to them his entire interest in the bonds because he put them in a position where they could, by redemption of the bonds, secure the proceeds thereof and eliminate his rights therein. We find nothing in the record, however, to show that decedent intended to, or did, in any manner yield up or release his interest in the bonds as potential survivor. The burden of proof in this respect is upon petitioner, and in the absence of evidence, we must hold that decedent continued to retain his right of survivorship until his death with respect to the bonds which were not redeemed by the coowners.

We hold, therefore, that the value of the bonds (as determined by stipulation) which were not redeemed are to be included in decedent's gross estate for Federal estate tax purposes.

Reviewed by the Court.

*Decision will be entered under Rule 50.*