ESTATE OF OLIVER B. AVERY, DECEASED, MARY HELEN AVERY BRENNAN (FORMERLY MARY HELEN AVERY), AND OLIVER B. AVERY, JR., COEXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91493. Filed May 22, 1963

*Clarence M. Barksdale,* and *Paul Brackman,* for the petitioner.
*Sheldon Chertow,* for the respondent.

BRUCE, *Judge:* The respondent determined a deficiency in estate tax in the amount of $10,239.47. Three issues are presented for decision: (1) Whether for purposes of computing the marital deduction the one-third share of the residue of the property passing to the widow under the will must be reduced by one-third of the Federal estate and State inheritance taxes chargeable to the estate; (2) whether a widow's allowance paid by order of the probate court qualifies as part of the marital deduction; and (3) whether U.S. savings bonds, series E, registered in coownership form in the name of the decedent and one of his adult children, are includable in the gross estate. Certain expenses arising in this proceeding are subject to adjustment under Rules 50 and 51. Some facts are stipulated.

#### FINDINGS OF FACT

The stipulation of facts and exhibits thereto are incorporated by this reference.

The petitioner is the estate of Oliver B. Avery. Mary Helen Avery Brennan and Oliver B. Avery, Jr., are the duly appointed and qualified executors.

Oliver B. Avery (hereinafter called the decedent) died testate on August 15, 1956, at which time he was a resident of St. Louis, Mo. His widow, Mary Helen Avery (presently Mary Helen Avery Brennan), sometimes referred to herein as Mary Helen or as the widow, and two adult children, Oliver B. Avery, Jr., herein sometimes referred to as Oliver, and Sallie Avery (presently Sallie Avery Gruner), herein sometimes referred to as Sallie, survived him.

At the time of his death the decedent was the chairman of the board of directors of the O. B. Avery Co., Inc., a corporation incorporated in Missouri in October 1955. The business taken over by the corporation had been conducted from January 1944 as a copartnership composed of the decedent and Oliver and Sallie, having equal shares of one-third each. Prior to 1944 it was carried on by a corporation in which the decedent owned a majority of the stock.

The decedent's will, dated December 10, 1954, and first codicil to the will, dated August 12, 1955, were filed on August 20, 1956, and were admitted to probate in the Probate Court of the City of St. Louis, Mo., on August 23, 1956.

On August 24, 1956, Oliver and Mary Helen became the duly qualified and appointed executors of the will. They have at all times since continued to act in such capacity.

The decedent's will, as amended by the codicil, provided:

### FIRST

I direct that all my just debts and funeral expenses be paid as soon after my decease as may be practicable.

### SECOND

I direct my Executors to pay all estate inheritance taxes and succession duties assessed by the United States, any state thereof, or any foreign government, against my estate, predicated on my death as the taxable event, including, but not by way of limitation, any insurance policies, joint property, tenancies by the entirety, trusts, gifts or appointive property which may be included as a part of my estate for tax purposes, or against any gift, devise or bequest out of the general assets of my estate. Such taxes as my Executors are hereby directed to pay shall not be charged against or deducted from any such gift, devise and bequest upon or by reason of which such taxes are assessed and paid. My Executors shall not, however, be charged with the payment of any inheritance tax of the State of Missouri which cannot be determined finally as of the date of my death.

### THIRD

I give and bequeath to my dearly beloved wife, MARY HELEN AVERY, the sum of FIFTY THOUSAND DOLLARS ($50,000.00) absolutely and forever.

\*         \*         \*         \*         \*         \*         \*

All the rest, residue and remainder of my property and estate which I may own or have the right to dispose of at the time of my death, both real, personal or mixed, of every kind and description and wherever the same may be situated, I give, devise and bequeath unto my dearly beloved wife, MARY HELEN AVERY, and my son and daughter, OLIVER B. AVERY, JR., and SALLIE AVERY GRUNER, in equal shares, absolutely and forever.

The widow did not renounce the will. Pursuant to an order of the Probate Court, dated April 23, 1957, the widow was paid on June 26, 1957, a widow's allowance in the sum of $12,000. Pursuant to an order of the Probate Court, dated November 3, 1958, a bequest of $50,000 was paid on November 6, 1958, to the widow.

Under the will, real estate located in the city of St. Louis, Mo., and the State of Florida, having an appraised value of $164,700, passed, subject to debts of decedent, in equal undivided one-third interests to Mary Helen, Oliver, and Sallie as tenants in common.

During World War II the decedent purchased U.S. saving bonds, series E, with his own funds and registered them in his name jointly with the name of his son or daughter. The names on these bonds have always remained the same. At the time of decedent's death, such bonds were unredeemed and located in a safe-deposit box in the First National Bank in St. Louis, registered in the name of O. B. Avery Co., a partnership, with sole and separate access thereto given to the three partners of the firm, and Ethel A. Klein, an employee thereof. Upon the death of the decedent, Sallie claimed, as her property, the bonds registered in the name of the decedent jointly with her name, which had a maturity value totaling $3,000, and Oliver claimed, as his property, the bonds registered in the name of the decedent jointly with his name, which had a maturity value totaling $3,000. These bonds were delivered to them by the executors. These bonds were dated from May 1942 to September 1945, and matured 10 years from date of issue.

The decedent's first wife, the mother of Oliver and Sallie, died in 1940. The decedent subsequently married Mary Helen. Oliver was married in January 1942 and entered the armed services of the United States in April 1942. He served in the Pacific area, returned to St. Louis in September 1945, and was released from the service in April 1946. He was an active partner in the business until incorporation, and thereafter served as an employee or officer of the corporation. Sallie was married in the spring of 1943 to William P. Gruner, then a graduate of the U.S. Naval Academy. Gruner served in the partnership business in 1946 to 1948. Sallie and her husband moved to California in 1948.

Prior to 1942 the decedent had made cash gifts to Oliver and Sallie in various amounts. When Oliver was leaving to enter the armed

services the decedent arranged to purchase series E saving bonds for Oliver and Sallie in equal amounts and placed the bonds in the company safe in folders bearing the names of Oliver and Sallie. The decedent's name was shown as coowner of each bond. Oliver and Sallie had access to the safe and to the bonds whenever they were present. In 1946 Oliver arranged to rent a safe-deposit box in the partnership name and placed the bonds and other valuable papers there. Neither Oliver nor Sallie had any need prior to August 1956 of the funds represented by the bonds.

The Federal estate tax return for the decedent's estate was filed by the executors on March 17, 1958, with the district director of internal revenue at St. Louis, Mo., and the total tax reported therein was paid.

In 1961 the executors filed a petition for authority to make a partial distribution of the estate and a petition for partial allowance of executors' commissions. In these it was represented that the only outstanding claim was the estate tax matter, and authority was requested to distribute stock and cash or notes in the amount of $26,000 to each of the three legatees, retaining approximately $24,000 to meet executors' commissions, tax liabilities, and court costs. The executors asked an allowance of fees in the amount of $5,656.03 to each. The court approved these petitions on March 10, 1961. On October 6, 1961, the court approved the fifth annual settlement, filed by the executors, which reported partial distributions as authorized and commissions paid, and showed retained assets in the amount of $13,999.70.

Subsequent to the payment of the widow's allowance of $12,000, the bequest of $50,000, and the payment of all known funeral expenses and debts of the decedent, and after the payment of State inheritance taxes of $3,522.41, expenses incurred in administering property subject to claims and debts of the decedent, and $26,932.48 in Federal estate taxes, the major portion of the residue was distributed as follows:

| Type of asset | Totals | Mary Helen | Oliver B. | Sallie |
|---|---|---|---|---|
| Cash | $19,340 | $14,350 | | $4,990 |
| Stock in O.B. Avery Co | 35,000 | 11,650 | $11,700 | 11,650 |
| Notes due from O. B. Avery Co | 23,660 | | 14,300 | 9,360 |
| Total personal property | 78,000 | 26,000 | 26,000 | 26,000 |
| Real property passing in equal undivided ⅓ interests as a tenancy in common | 164,700 | 54,900 | 54,900 | 54,900 |
| Partial distribution of residue under the will | 242,700 | 80,900 | 80,900 | 80,900 |

After such partial distribution, a balance in the estate of $13,999.70 was retained by the executors.

OPINION

Two issues relate to the marital deduction. The first of these concerns the effect of the provisions of the will devising the residue of the

property and estate to the widow, son, and daughter in equal shares.

The respondent determined that the gross estate amounted to $418,-987.49, and after deductions for expenses and debts and specific bequests the *residue before estate and inheritance taxes* amounted to $300,887.32. Deducting estate tax determined in the amount of $37,-171.95 in the deficiency notice and State inheritance tax of $3,522.41, leaves a *residue after these taxes* of $260,192.96, of which one-third devised to the widow amounts to $86,730.99. The respondent then computes the marital deduction as including this one-third, plus the $50,000 bequest, and $10,003 insurance proceeds, or a total of $146,733.99.

The petitioner contends that the marital deduction should be computed as follows:

| | |
|---|---:|
| Bequest under article III | $50,000.00 |
| Widow's allowance per court order | 12,000.00 |
| Life insurance proceeds | 10,003.00 |
| One-third of residue before taxes | 98,610.44 |
| | 170,613.44 |

The petitioner's computation of one-third of the residue is as follows:

| | | |
|---|---:|---:|
| Gross estate per return | | $433,891.80 |
| Less expenses and debts | | 66,057.46 |
| | | 367,834.34 |
| Less: | | |
| Cash bequest | $50,000 | |
| Widow's allowance | 12,000 | |
| Insurance proceeds | 10,003 | 72,003.00 |
| Residue | | 295,831.34 |
| One-third to widow | | 98,610.44 |

The petitioner's contention is that the widow's one-third of the residue to be included in the marital deduction is to be computed after expenses and specific bequests and *before* estate and inheritance taxes. The respondent contends that the residue is that remaining *after* these taxes are deducted.

Section 2056 of the 1954 Code [1] allows a deduction from the value

---

[1] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

\* \* \* \* \* \* \*

(4) VALUATION OF INTEREST PASSING TO SURVIVING SPOUSE.—In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—

of the gross estate of an amount equal to the value of any interest in property which passes or has passed from the decedent to the surviving spouse. The basic principle of the provision is that the spouse first to die may pass on to the survivor, free of estate tax, up to one-half of his or her estate, provided the property so transferred will be taxable in the estate of the survivor if on hand at the latter's death. *Estate of Edward F. Pipe*, 23 T.C. 99 (1954), affd. 241 F. 2d 210 (C.A. 2, 1957), certiorari denied 355 U.S. 814 (1957); *Estate of Michael G. Rudnick*, 36 T.C. 1021 (1961). The petitioner contends that the widow's share, including one-third of the residue under any calculation herein, is less than one-half of the gross estate, and argues that accordingly her share should be free from any tax, and since her share engenders no tax, the respondent's interpretation which would charge her share with a burden of a part of the estate tax is erroneous. The petitioner cites the recent case of *Hammond* v. *Wheeler*, 347 S.W. 2d 884 (Mo. S. Ct. 1961), as holding that the doctrine of equitable apportionment applies in Missouri. The petitioner further contends that the sentence in article II of the will directing that these taxes shall not be charged against any devise upon or by reason of which such taxes are assessed and paid means that no tax should be charged against the widow's share.

In *Hammond* v. *Wheeler, supra*, the widow renounced the will and took under the statute one-half of the real and personal estate absolutely, subject to payment of the decedent's debts. It was conceded that her share qualified for the marital deduction, but the dispute arose over the portion of the estate tax allocable to that share. The widow received an amount in excess of the marital deduction. The Supreme Court of Missouri pointed out that there was no Missouri statute providing for apportionment of the Federal estate tax, but held that principles of equitable apportionment should be applied and decided (p. 893) that—

the renouncing widow's share of her deceased husband's estate should be received by her undiminished by any charge for federal estate tax except by that

(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

\* \* \* \* \* \* \*

(c) LIMITATION ON AGGREGATE OF DEDUCTIONS.—

(1) GENERAL RULE.—The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2).

\* \* \* \* \* \* \*

(e) DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

(1) such interest is bequeathed or devised to such person by the decedent;

(2) such interest is inherited by such person from the decedent;

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

(4) such interest has been transferred to such person by the decedent at any time;

part of the federal estate tax allocable to that portion of her deceased husband's property received by her which formed part of his taxable estate.

The petitioner also cites *Pitts* v. *Hamrick*, 228 F. 2d 486 (C.A. 4, 1955), in which it was held that where a widow and two children inherited an estate in South Carolina, there being no will, the one-third share of the widow should bear no portion of the estate tax. The probate court had so directed, and this interpretation was accepted as the law of the State. The Court of Appeals said (p. 490):

It is inconceivable here that any part of the estate tax should be attributed to the share of the widow, where the purpose of Congress in allowing the marital deduction was to free the interest of the surviving spouse from the burden of that tax and where the estate receives the benefit of the deduction because of that interest.

To a similar effect see *Weyenberg* v. *United States*, 135 F. Supp. 299 (E.D. Wis. 1955), and *Babcock's Estate* v. *Commissioner*, 234 F. 2d 837 (C.A. 3, 1956).

In *United States* v. *Traders National Bank of Kansas City*, 248 F. 2d 667 (C.A. 8, 1957), cited by the petitioner, it was held that under Missouri law the widow's share of the Federal estate tax burden, to be subtracted from her interest in computing the marital deduction, was to be based upon her 37.13-percent interest in the entire estate rather than on her 50-percent interest in the personalty, out of which the tax was to be paid. It was not disputed there that some portion of the estate tax was attributable to the widow's share. The widow had elected not to take under the will and to take the commuted value of the dower and homestead interests measured by her life expectancy. She was entitled to take, also, 50 percent of the personal property.

The Federal estate tax is imposed upon the estate as a whole but how its burden is to be apportioned among the beneficiaries is to be determined by the State law. *Riggs* v. *Del Drago*, 317 U.S. 95 (1942); *Harrison* v. *Northern Trust Co.*, 317 U.S. 476 (1943); *Rogan* v. *Taylor*, 136 F. 2d 598 (C.A. 9, 1943).

The term "residuary estate" was defined in *In re Holmes' Estate*, 328 Mo. 143, 40 S.W. 2d 616 (1931), as referring to what remains after all charges against the estate and all specified legacies and bequests have been discharged.

Section 2056(b)(4) provides that the effect which the estate and inheritance taxes have upon the value to the surviving spouse of the interest passing from the decedent shall be taken into account in determining the value of the interest. The related regulations, section 20.2056(b)-4(c)(4), provide:

If the decedent bequeaths his residuary estate, or a portion of it, to his surviving spouse, and his will contains a direction that all death taxes shall be payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, is based upon the amount of the residue as reduced pur-

suant to such direction. If the residuary estate, or a portion of it, is bequeathed to the surviving spouse, and by the local law the Federal estate tax is payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, may not exceed its value as reduced by the Federal estate tax. Methods of computing the deduction, under such circumstances, are set forth in supplemental instructions to the estate tax return.

The respondent argues that pursuant to section 2056(b)(4)(A) the express provisions of the will govern the question of what part of the estate bears the burden of estate and inheritance taxes; that the direction in the will was to pay these taxes out of the general assets of the estate and then distribute the residue equally; and that necessarily the three receiving the residue equally must bear the burden of these taxes equally.

The instruction that taxes were not to be charged against any devise was followed by the executors and given effect by the respondent as to the specific bequest of $50,000 to the widow. As to the residue, the courts usually follow the testator's intent as stated in the will. *Estate of Newton B. T. Roney*, 33 T.C. 801 (1960), affd. 294 F. 2d 774 (C.A. 5, 1961); *Carpenter* v. *Carpenter*, 364 Mo. 782, 267 S.W. 2d 632 (1954). The instruction in the will is that the three beneficiaries shall take equal shares of the residue. The respondent's computation would accomplish this, but if the widow's one-third is free from any burden of the estate and inheritance taxes while the son's and daughter's thirds bear the burden, the resulting shares would not be equal. There is nothing in the will to support the conclusion that the burden of the tax was to fall on the son and daughter and to be borne only by their shares of the estate. The direction that taxes were not to be charged against any particular devise would apply as well to the son's and daughter's shares as to the widow's. This direction apparently refers to the specific bequests and not to the distribution of the residue.

We considered a similar situation in *Estate of Charles Juster*, 25 T.C. 669 (1955). There a residuary trust to the decedent's wife of one-half of the residue was conceded as qualifying for the marital deduction, but we held that under the laws of New York the value was to be computed after deduction for the estate tax and therefore the share bore the burden of one-half of the tax. The will directed that taxes be paid from the principal of the estate and that bequests and devises go clear and free of those taxes. This was construed as intending that the taxes be paid from the main body of the estate before distribution to any of the beneficiaries. See also *Estate of Rose Gerber Jaeger*, 27 T.C. 863 (1957), affd. 252 F. 2d 790 (C.A. 6, 1958).

The difficulty with the petitioner's argument is that here the specific provision in the will requires payment from the general assets and necessarily from the residue and before distribution of such residue. The statute provides that in computing the value of the interest of the surviving spouse, the effect thereon of such taxes shall be taken into

account. Hence, the value of the widow's share of the residue is to be computed after deduction of the estate and inheritance taxes.

The second issue also relates to the marital deduction. In 1957 the Probate Court authorized payment of a widow's allowance of $12,000, which amount was paid in a lump sum. The respondent determined that this amount did not qualify for the marital deduction and contends that it constituted a nondeductible terminable interest. The petitioner contends that such an allowance is a nonterminable interest and is includable as part of the marital deduction.

Section 2056(a) provides for the marital deduction, authorizing a deduction from the gross estate of an amount equal to the value of any interest in property which passes or has passed from the decedent to the surviving spouse as absolute owner. Subsection (b)[2] provides a limitation in the case of the passing of a terminable interest. Whether a widow's allowance will vest or terminate depends upon the State law applicable. *Cunha's Estate* v. *Commissioner*, 279 F. 2d 292 (C.A. 9, 1960), affirming 30 T.C. 812 (1958), certiorari denied 364 U.S. 942 (1961), rehearing denied 368 U.S. 870.

The respondent contends that the widow's right to the allowance at the time of the decedent's death was not a vested right of property which would survive as an asset of her estate, and relies upon the provisions of section 474.300 of the Revised Statutes of Missouri, stating:

When a surviving spouse dies, * * * no allowance shall be made under section 474.260 for his maintenance for *any* period after such death, * * *.

In *Phelps* v. *Bookwalter*, 210 F. Supp. 801 (W.D. Mo. 1962), it was held that under section 474.260[3] of the Revised Statutes of Missouri (1955), which was adopted as section 135 of the Missouri Probate Code, a 1-year's allowance paid in a lump sum to a widow became her absolute property and that it was not a terminable interest. The court said that the new probate code of 1955 did not change the prior rule of

[2](b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

[3] Sec. 474.260.—In addition to the right to homestead allowance and exempt property the surviving spouse and unmarried minor children of a decedent shall be entitled to a reasonable allowance in money out of the estate for their maintenance during the period of one year after the death of the spouse, according to their previous standard of living, taking into account the condition of the estate of the deceased spouse. The allowance so ordered may be made payable in one payment or in periodic installments, and shall be made payable to the surviving spouse, if living, for the use of such surviving spouse and the minor children ; * * *. The allowance herein authorized is exempt from all claims, charges, legacies and bequests.

*Monahan* v. *Monahan's Estate*, 232 Mo. App. 91, 89 S.W. 2d 153 (1936), construing the prior law, sec. 462.450, Mo. Rev. Stat.,[4] and holding that a widow's allowance thereunder was a nonterminable interest.

Cases cited by the respondent to the contrary involving laws of other States are distinguishable. *Estate of William Lamar Hailey*, 36 T.C. 120 (1961); *United States* v. *Quivey*, 292 F. 2d 252 (C.A. 8, 1961); *Cunha's Estate, supra.*

On the other hand, there are several cases holding that a widow's allowance paid in a lump sum was not a terminable interest within the meaning of section 2056 or its predecessor, section 812(e) of the 1939 Code. See *Estate of Michael G. Rudnick, supra* (Mass.); *Estate of Margaret R. Gale*, 35 T.C. 215 (1960) (Maine); and *Estate of Proctor D. Rensenhouse*, 31 T.C. 818 (1959) (Mich.).

In the present case the allowance was paid in a lump sum, there were no minor children, and there is no provision in the Missouri statute authorizing a recovery by the estate of any part of the allowance in case of the early death of the widow. Cases involving installment allowances have no application. We conclude that the widow's allowance here was not a terminable interest. It is includable as a part of the marital deduction.

The third issue is whether certain bonds registered in coownership form are includable in the gross estate as jointly owned property in which the decedent had an interest. Sec. 2040, I.R.C. 1954.[5] The decedent bought a number of U.S. savings bonds, series E, and had them registered in coownership form in his name and the name of either Oliver or Sallie. The testimony is that after the death of his first wife in 1940 the decedent made certain cash gifts to Oliver and Sallie; that Oliver, when about to enter the Army, suggested the purchase of such bonds in lieu of cash gifts, and the decedent adopted this suggestion; that the bonds were acquired monthly in the face amount of $100 each and registered, with Sallie shown as coowner one month and Oliver the next, alternating so that the amounts would be equal; that the bonds were kept in the company safe to which Oliver and Sallie had access whenever in the city; and that the bonds were placed in file folders labeled for Oliver or Sallie who could have taken and cashed any of the bonds in their respective names at any time. In 1944 the decedent purchased two bonds of $1,000 face amount similarly

---

[4] Mo. Rev. Stat. (1949):
SEC. 462.450.
In addition to dower, the * * * widow shall be entitled to keep as * * * her absolute property * * * such sums of money in exclusion of all debts, claims, charges, legacies, and bequests, as the court may deem reasonable for the proper support of the said * * * widow, * * * for the period of one year after the death of the spouse * * *

[5] SEC. 2040. JOINT INTERESTS.
The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of the interest therein held as joint tenants by the decedent and any other person. * * *

registered. The testimony is that the decedent was aware of the provisions of law relating to gift tax and that the purchase of the bonds of the larger denomination was intended as a means of using more of the maximum gift tax exclusion.

When Oliver returned to the company business after the war he suggested that the partnership rent a safe-deposit box and deposit the bonds, as well as other partnership documents, in the box. The suggestion was carried out. Oliver and Sallie, as well as the decedent, had the right of access to the box. The bonds were still in the box when the decedent died. The bonds were not included in the estate tax return. The respondent determined that the value of the bonds was includable in the gross estate as jointly owned property. The petitioner contends that the decedent had made completed gifts of the bonds to Oliver and Sallie and had no interest in the bonds at the time of his death. The argument is that the evidence shows (1) an intention to make gifts of the bonds in place of prior cash gifts; (2) delivery to the donees by placing the bonds in the safe, later the deposit box, where the donees had ready access to the bonds when in the city; and (3) acceptance by the donees of the gifts, since such deposit of the bonds was agreeable to them. The petitioner cites *Silverman* v. *McGinnes*, 259 F. 2d 731 (C.A. 3, 1958), holding that a gift had been made where bonds registered in coownership form were delivered to one of the donees and the intention of making a gift was confirmed by letter and certain of the donees were minor children of the donor.

The respondent contends that there is no evidence that the decedent had released his interest as potential survivor.

In *Estate of John H. Boogher*, 22 T.C. 1167 (1954), the decedent had purchased 37 series D and F U.S. savings bonds with his own funds and had each bond registered in coownership form in his name and the name of a relative, there being some 25 or more such relatives. None of the bonds was in the possession of the decedent at the time of his death, and seven of the bonds had been redeemed by the coowners. The respondent determined that the value of the 30 unredeemed bonds was includable in the gross estate as jointly owned property. We sustained this determination on the ground that there was no evidence that the decedent intended to or did release his interest as potential survivor.

The *Silverman* case, proceeded on the interpretation that the evidence of a gift was sufficient to show that had the donor cashed the bonds he would be compelled to hold the proceeds in trust for the donees of his *inter vivos* gift. We cannot say that the evidence here is sufficient to establish that this decedent intended to or did release his interest as potential survivor. Oliver was married before these purchases began, and Sallie was married during part of the period

during which the bonds were purchased. Since Oliver and Sallie were adults at the time, there is no apparent reason why, if completed gifts were intended, the decedent retained a right of coownership as to every bond. We think the facts in this case are more nearly controlled by our decision in the *Boogher* case, and hold that the value of these bonds is includable in the gross estate.

*Decision will be entered under Rule 50.*