The FIRST NATIONAL EXCHANGE BANK OF ROANOKE, Executor and Trustee under the Will of Josephus Daniels Pell, deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. 1223.

United States District Court
W. D. Virginia,
Roanoke Division.

May 16, 1963.

Joseph Wysor Smith, Roanoke, Va., Clyde H. Perdue, Rocky Mount, Va., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, John D. Clark, Jr., Attys., Dept. of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

Josephus Daniels Pell died a resident of Franklin County, Virginia, on September 2, 1958 leaving a will under which the First National Exchange Bank of Roanoke duly qualified as executor. The testator left a widow but no descendants, adopted children, descendants of adopted children or parents. By his will he, in effect, left his entire estate in trust, directing that the entire income therefrom be paid to his wife as long as she lived and, after her death, be distributed for a period of thirty years to various persons and the Pell Foundation, a charitable foundation, and that, after said thirty-year period, the entire principal be paid over to the Pell Foundation.

§ 64.13 of the Code of Virginia provides, insofar as here material, as follows:

"§ *64–13. When and how benefits of will may be renounced.*—When any provision for a husband or wife is made in the consort's will, the survivor may, within one year from the time of the admission of the will to probate, renounce the provision. * * *"

On October 24, 1958, slightly more than two weeks after the will was probated, Mrs. Pell duly renounced the will and thereby, under § 64–16 of the Code of Virginia, became entitled to one-half of the surplus of the decedent's personal estate after payment of funeral expenses, charges of administration and debts. (Va. Code §§ 64–11 and 64–16.) And, in addition to such interest in personalty, the widow, as a result of the renunciation, also became entitled under §§ 64–16 and 64–27 of the Code of Virginia to dower in one-third of the real estate of her husband in Virginia. This real estate was finally valued for federal estate tax purposes at $155,309.45. Under § 64–38.1 of the Code of Virginia the widow had the right, in lieu of having her dower assigned in the land of which her husband died seized, to have her dower commuted if it appeared that her dower could not conveniently be laid off and assigned in kind.

The plaintiff executor filed a suit in the Circuit Court of Franklin County, Virginia, for the purpose of having certain provisions of the will construed and for the guidance of the court in the administration of the estate. In the bill the executor alleged that it had been advised that the widow would demand that her commuted dower interest be paid to her in cash under § 64–38.1 on the ground that her dower could not conveniently be laid off and assigned in kind. The widow filed an answer to the bill of complaint in which she did take that position and make that demand. The court found as a fact that dower could not conveniently be laid off and assigned to the widow in kind and calculated the widow's dower interest as 21.-983% of the fair value of the land. And subsequently, after the sale of the land, this amount was paid to the widow, amounting to $33,167.70.

§ 2056 of the Internal Revenue Code of 1954 provides for the so-called marital estate tax deduction. In sub-paragraph (a) it provides for deducting from the value of the gross estate an amount equal to the value of any property interest which passes or has passed from the decedent to his surviving spouse. But under the provisions of sub-paragraph (b) of the section no deduction is allowed for a so-called terminable interest. A dower interest, if not commuted, is clearly a terminable interest since it terminates upon the widow's death and passes to someone else. The question that we have before us is whether the commutation of the dower right and its payment in cash takes it out of the terminable interest rule. (The deductibility of the sum paid the widow for the statutory interest in the decedent's personalty which accrued upon her renunciation of the will is apparently not in issue.)

The government's position in this litigation is that when Mrs. Pell renounced her husband's will she became entitled to a terminable dower interest in her husband's lands which she subsequently traded or "sold" in the commutation proceedings for a cash interest; and that the deductibility of the interest left Mrs. Pell by the will is to be determined by the form of the interest to which she theoretically became entitled upon the renunciation of the will rather than by what she ultimately received as a result of the commutation proceedings.

Apparently the government does not seek to hold Mrs. Pell to the original terms of the will since, if it did, it would also have disallowed as a deduction the cash received as her share of the personal property. But it disallowed only the cash received for the real estate and therefore must be attacking only the effect of the dower commutation proceeding rather than the effect of the renunciation.

The taxpayer's position on the other hand is that her rights were not definitely fixed by the renunciation but that, since her dower could not conveniently be laid off in kind, she thereby acquired the option of either proceeding to have her dower right commuted under § 64–38.1, as she did, or of proceeding under § 64–38 to procure a decree establishing the fair net annual value of the propor-

tional part of the real estate she would have been entitled to have as a tenant in dower which would thereafter constitute a lien on all of the decedent's real estate.

Of course a number of other solutions could have been worked out by agreement of all interested parties but the above are the only enforceable rights that Mrs. Pell acquired upon the renunciation of the will. In the absence of agreement she had to elect one of those two courses. And neither of them is primarily imposed on her with an election to choose the other. She must elect one or the other or make some other agreement with the other interested parties. In this case she elected to proceed under § 64–38.1 rather than to proceed under § 64–38 or to work out some other agreement. And of course what she elected to receive was clearly not a terminable interest and was, therefore, deductible in arriving at the taxable estate.

Before turning to the cases it may be well to advert to the history of the marital deduction in estate tax law.

Prior to the enactment of the provisions in question in 1948 the citizens of community property states had a very great advantage over the citizens of other states in the application of the estate tax laws. In the community property states a wife at all times owns one half of the community property, i. e., if a husband has done well and accumulated a large estate he does not own it all as he would in a common law state but he owns only one-half of it. The other half belongs at all times to the wife and is not an asset of the husband's estate at his death. Consequently when a wealthy man died in a community property state he would be taxed on only half of the wealth that he had accumulated. The wife would of course be taxed on the other half when she died but the net effect of splitting the estate into two parts was to subject it to lower average rates since no part of it gets into the higher brackets which would have been applicable if it had all been one estate instead of two.

To put the citizens of common law states on the same basis as those of community property states Congress enacted the amendments which put into effect the so-called marital deduction. Under these provisions, if a husband left part of his property to his wife, his estate would get a deduction of the value of the property so left up to (but not more than) one-half of his taxable estate so that if a full half was left to the wife his estate would be taxed no more than it would have been if he had lived in a community property state. And, as in any community property state, the half left to the wife would, upon her death, be taxed in the same manner and at the same rates as the half of the combined estate that was owned by the wife in a community property state. For in the community property state the wife owns half of the combined accumulation outright and it is thus clearly taxable in her estate.

While equalizing the situation in the common law and community property states, Congress was careful not to give an advantage to the common law states. Hence it was provided that, in order to take advantage of the marital deduction, the property of the husband which might be left to the wife in a common law state could not be tied up in a trust or otherwise left so that it would not be taxable in the wife's estate when she died, but must be left in such a way that it would be taxable in the wife's estate upon her death—assuming of course that she did not eat it up or give it away in the meantime which would of course also be the situation in a community property state.

Therefore the qualification of the marital deduction which had to do with terminable interests was put in the law to see that the combined estate of the husband and wife in the common law state did not, under the equalizing provisions, get any advantage which did not already accrue to the combined estates of the husband and wife in a community property state. In other words, if the husband in a common law state left the

wife only an interest for life in certain property, that interest would not be taxable in her estate and that interest would therefore not qualify for the marital deduction in the husband's estate.

Now it may be well to start the discussion of our particular case by noting that if the intent of Congress has been carried out in full the deduction should apply here. The commuted dower of the widow, consisting of cash which doubtless was invested by her, will be a part of her estate when she dies and taxable as such, unless of course she eats it up or gives it away which a wife in a community property state could also do and thus avoid tax on her estate.

So we should be slow to find that Congress, which was trying to equalize the situation in the common law and community property states, failed of its purpose in this particular and left the wife in a common law state whose dower was commuted in a worse situation than a similarly placed community property wife. And certainly such a conclusion is to be avoided if there is any rational basis for concluding that Congress did not fail of its purpose.

There is no Fourth Circuit case in point but there are four cases from three different Circuit Courts and a District Court in a fourth circuit which, while different state laws are involved with varying provisions, nevertheless all seem to me squarely in point in favor of the taxpayer's position here. And no case has been found which supports the government's view. The government nevertheless argues, from rather loose general principles of estate taxation, that the four cases are all wrong—or perhaps more accurately that they are distinguishable, though in my view the distinctions made are of verbiage rather than substance.

The first of these cases is Traders National Bank of Kansas City v. United States, the opinion of the District Court being found in 148 F.Supp. 278 (1956) and the case on appeal, United States v. Traders National Bank of Kansas City,

being found in 248 F.2d 667 (8 Cir., 1957). In that case the widow renounced the will and as a result received one-half of the personal estate, plus homestead rights, and became endowed of a one-third part of all of the real estate. The widow elected to have her dower commuted.

Apparently, as here, only the commuted value of the dower rights and homestead were questioned in the case. As far as the statutory law of Missouri is concerned it appears to have differed at the time from the statutory law of Virginia only in that the widow had an absolute right to have her dower commuted and paid in cash whereas in Virginia the right does not exist unless it can be shown that "her dower cannot be conveniently laid off and assigned in kind."

But where the dower cannot be conveniently laid off and assigned in kind, as was found to be true in this case, the result in Virginia is the same as the result was in Missouri at the time of the Traders case.

The government's position was that the election to commute the dower was in effect a sale of the widow's dower interest and it relied upon § 81.47(d) of Regulation 105 which read:

"* * * Subsequent conversions of the property are immaterial for this purpose. Thus, where a decedent bequeathed his estate to his wife for life with remainder to his children, the interest which passed to his wife is a 'nondeductible interest', even though the wife agrees with the children to take a fractional share of the estate in lieu thereof, or sells the life estate for cash, or acquires the remainder interest of the children either by purchase or gift."

But the District Court held, 148 F. Supp. at p. 282:

"In this respect, the law of Missouri is clear that the commuted dower interest is a distinct interest from that taken by dower, and is,

therefore, not a subsequent conversion. * * *

"The statute, therefore, perceives two distinct interests available to the widow where the husband has died intestate, or in the event of renunciation. One is a vested life interest which continues after the administration has been closed for her natural life, and the other is a vested and absolute interest, which may be taken by option before the estate has been closed. Under these circumstances, it is the opinion of the court that the commuted value of dower represents a non-terminable interest within § 812, supra."

Consequently the court allowed the marital deduction.

On appeal the Eighth Circuit affirmed, United States v. Traders National Bank of Kansas City, 248 F.2d 667 (1957), saying at p. 669 with respect to the regulation above referred to and an example found in it:

"It was and is contended for the government that a different conclusion should follow from Section 81.-47(d) of Regulation 105, as added by Treasury Decision 5699 and particularly the example illustrating the regulation quoted by the district court at page 282 [148 F.Supp.] in [3]. But we find no error in the reasoning or conclusion of the district court in respect to the first question. As to the example relied on, its assumed premise that a terminable interest in property in the estate of the husband passed to the wife and that she divested herself thereof by contract, plainly differentiates it from the case at bar. Here, as the district court rightly declared, the interest the widow took, as opposed to the terminable dower interest which she might have taken, was absolutely vested by reason of the statute and was a nonterminable interest, namely, cash money belonging absolutely to her."

The next decided case in point is United States v. Crosby, 257 F.2d 515 (5 Cir., 1958). Here it was necessary in the course of the administration of the estate to sell certain lands in Alabama and, under Alabama law, when land subject to a widow's dower must be sold for the payment of debts, etc., the widow's dower may, if she consents, be sold with the residue of the lands and the widow is to take out of the proceeds of sale a fair equivalent for the dower interest sold. The court held that, contrary to the government's position, the transaction did not amount to a sale by the widow of her dower interest but on the contrary to a sale by the administrators of the entire tract of land with the widow's consent and the commutation of her dower rights therein.

The court reviews at length the origin of the marital deduction and the reason for the terminable interest rule as set forth above and concludes, 257 F.2d at pp. 519–520:

"If as the Government contends, Mrs. Crosby received from her husband's estate a life estate of dower which she sold then it would follow that her dower was a terminable interest which did not qualify for the marital deduction. The situation must be appraised as it existed at the time of the husband's death, says the Government, and as the Government would appraise it the widow then had nothing but a terminable life interest. With this position we could agree if the Alabama legislature had not enacted Title 61, §§ 271–272. Upon the husband's death, the time as of which the Government says the situation is to be appraised, there was the land in Alabama subject to the Alabama law of dower. But there were also at the time of the husband's death debts which his estate was required to pay. There was a liability to the United States and the several states where property was owned for estate and inherit-

ance taxes. At the time of the decedent's death there existed a necessity for the sale of Alabama land to provide funds for discharging estate obligations. The land could not have been sold subject to dower. The Alabama law permitted the administrators to sell the land and permitted the widow to give her consent to the sale by the administrators of her dower interest. The sale was made, not by the widow but by the administrators and we think the distinction significant. A sale results from a contract between parties for the transfer of property for a consideration fixed by the bargain. See Williamson v. Berry, 8 How. 495, 49 U.S. 495, 544, 12 L.Ed. 1170. Mrs. Crosby did not sell her dower interest, if we correctly read the Alabama statute; she consented to the sale by the administrators. The statute provided that she should receive the fair equivalent for her dower interest. This equivalent was ascertained by the court by proof. That the equivalent became payable to the widow by reason of an election made by her to take an absolute interest of an 'equivalent' rather than a life estate dower interest, does not defeat the marital deduction. United States v. Traders National Bank, 8 Cir., 1957, 248 F.2d 667. Nor should the marital deduction of the equivalent be denied because the right of election would not have existed if the administrators had not been required to sell the property to discharge estate obligations. We conclude that the fund paid to Mrs. Crosby as the equivalent of her dower interest was a 'statutory interest in lieu' of dower within the meaning of 26 U.S.C.A. (I.R.C. 1939) § 812(e) (3) (C). If dower as such had been assigned to Mrs. Crosby she would have had no vested estate until the assignment but, upon the assignment being made,

her vested estate would have been regarded as relating back to the date of her husband's death and in contemplation of law she would have been regarded as his immediate successor in title. Bettis v. McNider, 137 Ala. 588, 34 So. 813. So then, would the equivalent of dower relate back to the time of the husband's death and be regarded as an interest passing from him to the widow.

\* \* \* \* \* \*

"We are in agreement with the conclusion of the district judge that the amount received by Mrs. Crosby as the equivalent of her dower interest in the Alabama lands was an interest which passed to her from her husband and that it was a statutory interest in lieu of dower. Hence the determination of the district court is correct. It is affirmed."

As may be inferred the District Court had determined that the amount received by Mrs. Crosby was not the proceeds of sale of a terminable interest.

The next case is Dougherty v. United States, 292 F.2d 331 (6 Cir., 1961). This case involves the law of Kentucky which was somewhat like the Virginia law in that it provided that a court of equity could order the sale of jointly owned real estate which had passed by devise or descent to a widow and heirs of the decedent and in which the widow had a life right in a portion thereof if the property could not be divided without materially impairing its value or the value of the plaintiff's interest therein. As in the case at bar the real estate in question was in separate parcels, each of which was not susceptible to division without materially impairing its value. Further the widow had renounced the provision for her in her husband's will, thereby acquiring a dower interest in the real estate, and was entitled to have the property sold free of her dower right and the value of that right determined and paid to her in cash.

The statute was followed and the commuted value of the widow's dower interest was paid to her in cash. The executors claimed a marital deduction for the amount of cash so paid the widow.

The government's contention was that the rights that the widow received were terminable rights and that she in effect sold them upon renouncing the husband's will. The widow "received her dower right in her husband's real estate" (though it was never assigned to her and the court found that it could not be assigned on account of the nature of the land) and, having received the dower right, she voluntarily thereafter sold it.

The court said, 292 F.2d at p. 337: "The problem here involved has been heretofore considered by the Court of Appeals in the Eighth and the Fifth Circuits. United States v. Traders National Bank of Kansas City, supra, 8 Cir., 248 F.2d 667; United States v. Crosby, supra, 5 Cir., 257 F.2d 515. In both of these cases the Court held that the money received by the widow was not a terminable interest. We agree with the ruling in those cases and with the reasoning of the Court in support of such ruling. As stated in the Crosby case, the provisions of the Internal Revenue Code applicable to the facts of this case should be liberally construed and applied to the purposes of their enactment. The purpose of the provision was to extend to married taxpayers in common law states the advantages of residents of community property jurisdictions by permitting a surviving spouse to acquire, free from estate tax exaction, one-half of what is referred to as the adjusted gross estate of the deceased spouse. Generally speaking, the 'terminable interest' concept was devised for the purpose of assuring that if the property bequeathed to the spouse was to be excluded from the gross estate of the decedent, it would be adequately integrated in the spouse's estate so that on her death, it would

not escape the death tax a second time. 'The basic principle * * * is that the spouse first to die shall be permitted to pass on to the surviving spouse free of estate tax up to one-half of his or her estate, provided only that the terms of the transfer are such that this property will be taxable in the estate of the surviving spouse.' Estate of Pipe v. Commissioner, 23 T.C. 99, 104. Under this construction of the Act, we are more concerned with what the widow actually received in the settlement of her husband's estate than with what she was technically entitled to receive but actually did not receive. The transaction is materially different from an allotment of dower in the settlement of the estate and a subsequent sale by her of such allotment. The Government contends that the Traders National Bank case and the Crosby case are distinguishable from our present case, but we are of the opinion that the distinguishing features pointed out by it are not sufficient to prevent the rulings from being applicable."

The foregoing is probably the case nearest to that at bar inasmuch as in that case as in this the lands were sold because it was impracticable to assign the widow's dower in the several tracts.

The last case is Hiles v. United States, 198 F.Supp. 857 (D.C., 1961). This case apparently was not appealed. In it the widow filed her dissent from the will and her election to receive her share in cash. The court fixed the value of her dower interest at $14,000.00 and this amount was paid to her by the executrix.

The court said, 198 F.Supp. at pp. 859 and 860:

"Section 2056, Internal Revenue Code 1954, allows for what is known as the marital deduction, and provides generally that an amount equal to the value of any interest in property which passes or has passed from a decedent to his surviving spouse may be deducted from

the gross estate in computing Federal Estate Tax. The marital deduction was fashioned to achieve better geographical equalization between citizens of the community property states and the non-community property states in the impact of estate taxes. The policy of the marital deduction rests on the anticipation that the property used for the marital deduction and passing from the deceased spouse to the surviving spouse, though exempted from any tax in the estate of the deceased spouse, gains only a respite and not absolution, as such property will augment the estate of the surviving spouse and ultimately make its contribution under the Estate Tax Law. * * *

\* \* \* \* \* \*

"In the instant case there is not even any suggestion by the Government that there is any infirmity in the decree issued by the Probate Court in Equity, which has settled the property rights and interests of the widow in the property of the deceased. The death of Morgan Hiles in and of itself did not instantly vest in his widow a life estate in the lands of which he died seized; his death gave to the widow the right to have dower assigned to her, which, under Alabama law, is no more than a chose in action. The dower interest of the widow had never been set apart to Mrs. Hiles, therefore her dower interest had never vested and she did not take a terminable interest in the lands of Morgan Hiles. She took the sum awarded by the Probate Court in lieu of her dower interest, and in my opinion this sum was subject to the marital deduction."

■■ It is well setted that until the widow's dower has been assigned to her her dower right is merely a right to sue for and compel the setting aside to her of her dower interest. It is not an estate in itself. 6 Michie's Jurisprudence, p. 370; 1 Minor on Real Property (2d Ed.

Ribble) 405. When assigned it becomes a life estate in the lands assigned. But prior to that time it has attached to nothing, although it is a right vested in the widow.

■ It would seem to follow logically therefore, as the cases have held, that, when dower is never assigned but is commuted instead, nothing has been sold. The right to dower is extinguished by the payment of the equivalent in cash. No sale is involved because the widow has never received any estate in the land and she elects to take her dower interest in cash rather than by taking a lien on the land for the estimated annual value of her right for life. A fortiori is this true when, as here, the land is of such a character that it is impractical to assign dower in kind.

■ It follows that in this case the widow never had any right to have her dower right assigned to her in land since it was not susceptible of assignment in kind as found by the court. The only right she could ever have had was the right to have it commuted and paid to her in cash under § 64–38.1 or to have its annual value established and become a lien on the whole of the deceased husband's land and paid her annually under § 64–38. Consequently no sale of anything was involved—merely an election between rights of equal standing under the law. She could have exercised the right under § 64–38 and thus acquired a terminable interest. But she actually exercised her right under § 64–38.1 and thus acquired cash which was certainly not a terminable interest.

■ The government contends that the tax is imposed upon the interest which passed from the decedent by reason of his death. This may be conceded. It goes on to add that it is not based upon the interest which the surviving spouse received. But this is a non-sequitur. The value of the entire estate is of course determined by the sum of the interests which the decedent owned at the time of his death—even though valuation at a later date is permissible.

But the marital deduction is not based upon the sum of the decedent's property at the time of his death but upon what actually passed to the surviving spouse (unless more than the maximum marital deduction so passed). In this case what actually passed was cash, though it probably was not certain that only cash would pass until the widow elected to take under § 64–38.1 rather than under § 64–38 and the court determined that dower could not conveniently be assigned in kind. Actually the value received by the widow was the same. But the fact that she received it in cash rather than in annual payments for life which would have been a lien on the land brings it within the marital deduction formula.

The government cites Senate Report No. 1013, Part 22, Appendix, which provides:

"Therefore, except as provided in clause (iii) of subparagraph (B), conversions of property after decedent's death are immaterial to the deduction."

This may be conceded. But there was no conversion here. The court has found that the widow could never have taken her dower in kind because the lands were not suspectible to the assignment of dower in kind. Consequently there is not here even the option to take dower in kind or in cash that existed in the widow in some of the cases that are above referred to. This widow's only option was to take the cash value of her dower right —or to take annual cash payments of a third of the estimated profits of the land as a charge upon the land. She chose the former.

The government also quotes from Regulations of the estate tax, § 20.2056(b)—1(e) (3) as follows:

"Whether or not an interest is nondeductible because it is a terminable interest is to be determined by reference to the property interests which actually passed from the decedent."

In this case no interest in real property actually passed from the decedent to the widow but only the right to have her dower commuted or to take as a lien on the land annual payments estimated as the equivalent of what her dower rights would have yielded had dower in the land been susceptible of assignment.

■ It is true that the widow here renounced the will, thereby creating in her dower rights which she would not have had under the provisions of the will. But it can hardly be contended that a renunciation is a sale. The renunciation under the statute brought into existence rights which the widow would not otherwise have had but which she thought were more desirable than the rights granted to her under the will. There was certainly no sale of the rights granted under the will. Mrs. Pell renounced them and thereby acquired other rights as a matter of law, not as a result of any sale or other transaction with any other party. And further, as above indicated, the government has apparently conceded that the renunciation had no effect on the situation since it has not undertaken to deny the deductibility of the cash received upon the renunciation in settlement of the widow's right in the personalty.

I must therefore hold that the executor should be allowed a deduction for estate tax purposes of the payment made to the widow for the commuted value of her dower right.

An order will be entered accordingly.